[Cite as *Couch v. Ohio Civ. Serv. Emps. Assn.*, 2010-Ohio-6258.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

ARNOLD COUCH, JR., ET AL.,

    PLAINTIFFS-APPELLANTS,               CASE NO. 1-10-45

    v.

OHIO CIVIL SERVICE EMPLOYEES
ASSOCIATION, AFSCME LOCAL 11,
AFL-CIO, ET AL.,                        O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2010 0303

**Judgment Affirmed**

Date of Decision:   December 20, 2010

APPEARANCES:

    *Michael A. Rumer and Victoria U. Maisch* for Appellants

    *Rory P. Callahan* for Appellee, Ohio Dept. of Rehabilitation and
        Corrections

    *Thomas B. Cochrane*, Attorney for Appellee, ACSEA/AFSCME
        Local 11

**WILLAMOWSKI, P.J.,**

{¶1} Plaintiffs-Appellants, Arnold Couch, Jr. and Shawn Briley (or jointly, "Appellants"), appeal the judgment of the Allen County Court of Common Pleas dismissing their complaint against Defendants-Appellees, finding that the trial court lacked subject matter jurisdiction because their claims were subject to a public employees' collective bargaining agreement. On appeal, Appellants maintain that their claims against the Ohio Civil Service Employees Association ("the OCSEA") and the Ohio Department of Rehabilitation and Correction ("the ODRC") (or jointly, "Appellees") involve separate agreements that are not subject to any collective bargaining agreement and the trial court has jurisdiction to hear their contract claim. For the reasons set forth below, the judgment is affirmed.

{¶2} This case involves a dispute between Appellants and their union, the OCSEA, and the ODRC regarding the "institutional seniority" to which Appellants are entitled under the collective bargaining agreement ("CBA") governing their employment. Appellants were originally employed by the ODRC at Allen Correctional Institution ("ACI") as corrections officers. Briley began working at ACI in July 1996, and Couch had been employed at ACI since September 1997. In 2004, the state decided to close near-by Lima Correctional Institution ("LCI"). As a result of LCI employees "bumping" into positions at ACI, both Couch and Briley were displaced in June 2004. Due to this

displacement, Appellants were counseled by OCSEA personnel about lay-off options and rights.

{¶3} In lieu of accepting a straight layoff and loss of employment or a "transfer" to another northern district facility (without recall rights), both Couch and Briley chose an "18.14 Agreement" – known as a "placement" under Article 18 of the OCSEA's CBA. Under the terms of the 18.14 Agreements (or, "the Agreements"), Appellants would be placed into positions at Warren Correctional Institution ("WCI") in Lebanon, Ohio, receiving a preferential placement over other state employees who might have wanted to apply for those positions. The provisions of the 18.14 Agreements allowed Appellants to "retain recall and reemployment rights pursuant to the provisions of Article 18" of the CBA.

{¶4} Appellants were eventually recalled to work at ACI. Briley began working at ACI in May 2005, and Couch resumed his employment in July 2006. Appellants believed that the terms of the 18.14 Agreements entitled them to retain their original "institutional seniority"[1] rights dating back to when they began working at ACI in 1996 and 1997, respectively. However, in 2010 Appellants were informed that their institutional seniority had been reduced as the result of a Seniority Tribunal Decision. Pursuant to a March 12, 2010 "Settlement

---

[1] Institutional seniority affects an employee's preferential shift assignments, days off, overtime election, etc. This decision does not involve Appellants' "state seniority" dates, which remain as the dates they were originally hired and began their employment with the state in 1996 and 1997.

Agreement" between the ODRC and the local chapter of the OCSEA (OCSEA/AFSCME Local 11), Briley and Couch would be given sixty days within which to bid for a new position based upon their recalculated seniority dates, i.e., the dates they were rehired at ACI in 2005 and 2006.

{¶5} On March 24, 2010, Appellants filed a verified complaint against Appellees. Appellants were seeking a temporary and permanent injunction enjoining the ODRC and the OCSEA from further adjustment of their seniority dates; a declaratory judgment as to their rights under the 18.14 Agreements; and compensatory and punitive damages.

{¶6} On April 16, 2010, the ODRC and the OCSEA each filed Civ.R. 12(B) motions to dismiss, contending that the trial court lacked subject matter jurisdiction because Appellants' claims were completely preempted by Ohio's public employment collective bargaining statute, R.C. 4117, and could only be brought before the State Employment Relations Board ("SERB"). Appellees maintained that Appellants' complaints were subject to the exclusive jurisdiction of SERB because: (1) the union's only duty to Appellants arose out of its status as their collective bargaining representative; (2) Appellants' complaint was actually an unfair labor practice charge; and (3) the trial court could not decide the case without interpreting the CBA. Basically, Appellees argued that Couch and Briley filed a lawsuit over a seniority dispute that was governed by a collective

bargaining agreement and the court of common pleas was without jurisdiction to hear the dispute under Ohio law.

{¶7} Appellants opposed the motion to dismiss, asserting that the 18.14 Agreements took precedence over the CBA and, therefore, they were asserting rights that were independent of R.C. 4117. Furthermore, they stated that their claims did not deal with the CBA presently in existence (from April 15, 2009 through February 29, 2012), but that their claims dealt with the determination of rights pursuant to the CBA that was applicable from March 1, 2003 to February 28, 2006, and which was no longer in effect. They argued that this was basically a "contract law case" concerning the breach of the 18.14 Agreements which materially altered their institutional seniority and that the common pleas court had jurisdiction to hear their claims.

{¶8} On May 28, 2010, the trial court issued its Order granting Appellees' motion to dismiss on the basis that it lacked subject matter jurisdiction. The trial court held that:

> **issues dealing with Plaintiffs' "institutional seniority" are subject to the Collective Bargaining Agreement; that ORC 4117.10(A) deprives the Court of Common Pleas of jurisdiction herein in that Plaintiffs have a grievance procedure through binding arbitration and if Plaintiffs believe they have been treated unfairly by their union's discretionary decisions regarding their interests or that the terms of the Collective Bargaining Agreement are not correctly applied and prosecuted by the union, they are free to file Unfair Labor Practices charges**

**against the union with the State Employees Relation Board (SERB) pursuant to ORC 4117.11(B)(6).**

{¶9}   Appellants timely appeal, raising the following assignments of error and issues for our review.

### First Assignment of Error

**The trial court erred in finding that Appellants' claims for breach of the "18-14 Agreements" by Appellees were subject to grievances and binding arbitration pursuant to the collective bargaining agreement.**

### Second Assignment of Error

**The trial court erred in finding that it lacked subject matter jurisdiction when it determined that R.C. 4117.10(A) was applicable to issues addressing Appellants' institutional seniority rights arising from "18.14 Agreements" which, in fact, relate back to an expired collective bargaining agreement.**

{¶10} The lack of subject matter jurisdiction is a question of law and addresses whether the plaintiff has alleged any cause of action over which the court has authority to decide. *McHenry v. Indus. Comm. of Ohio* (1990), 68 Ohio App.3d 56, 62, 587 N.E.2d 414.   An appellate court reviews a trial court's dismissal for lack of subject matter jurisdiction under Civ.R. 12(B)(1) de novo. *Antram v. Upper Scioto Valley Local School Dist. Bd. of Edn.*, 3d Dist. No. 6-08-4, 2008-Ohio-5824, ¶6.

{¶11} R.C. Chapter 4117, titled "Public Employees' Collective Bargaining," contains a comprehensive framework for the resolution of public-

sector labor disputes by creating a series of rights and setting forth specific procedures and remedies for the vindication of those rights. *Franklin County Law Enforcement Ass'n v. Fraternal Order of Police, Capital City* (1991), 59 Ohio St.3d 167, 169, 572 N.E.2d 87. The State Employment Relations Board has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117. Id. at paragraph one of the syllabus. "If a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, *the remedies provided in that chapter are exclusive*." (Emphasis added.) Id. at paragraph two of the syllabus.

{¶12} R.C. 4119.08(A) provides that *"[a]ll matters pertaining to wages, hours, or terms and other conditions of employment* and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section and division (E) of section 4117.03 of the Revised Code." (Emphasis added.) Further, R.C. 4119.10(A) provides that "[a]n agreement between a public employer and an exclusive representative entered into pursuant to this chapter *governs the wages, hours, and terms and conditions of public employment covered by the agreement*." (Emphasis added.)

Case No. 1-10-45

{¶13} Appellants acknowledge that R.C. 4117 applies to disputes concerning public employees and matters involving their union and collective bargaining agreements. However, they contend that their dispute with Appellees involves independent rights arising from a separate agreement which is not governed by any current CBA. Appellants' assignments of error assert the following issues:

> 1. Their claims arise out of the independent 18.14 Agreements, not a CBA, and are not controlled by R.C. 4117;
> 2. Any relation their 18.14 Agreements have to a CBA relates back to the old CBA, which expired in 2006 and is no longer in existence. Therefore, common law contract principals apply because there are no grievance or bargaining rights under an expired contract; and,
> 3. The trial court's decision deprives Appellants of their state and federal constitutional rights to contract.

{¶14} Appellants assert that their issues involve 18.14 Agreements, which are based on Article 18 of the CBA concerning procedures and guidelines pertaining to "Layoffs." Section 18.14 of the CBA in existence in June 2004 stated:

**18.14 – Placement**

> **Notwithstanding any other provisions of Article 17,[2] the Union and the agency or agencies may agree, in writing, to place an employee to be laid off in an existing vacancy which may not be otherwise available. Such agreement shall take precedence over any other Section/Article of this Agreement. However, such placement shall not result in the promotion of the affected**

---

[2] Article 17 of the CBA sets forth rights, guidelines and procedures concerning "Promotions, Transfers, Demotions and Relocations."

> **employee. All employees placed into existing vacancies under this Section shall retain recall and reemployment rights pursuant to the provisions of this Article.**

We note that Section 18.14 of the current CBA (2009-2012) has the exact same wording as the CBA (2003-2006) that was in existence at the time of Appellants' 18.14 placements in 2004.

{¶15} The actual Article 18.14 Agreements involved in this case were short, less than one-page documents titled "Article 18.14 Agreement -- Ohio Department of Rehabilitation and Corrections And OCSEA/AFSCME Local 11." The first paragraph stated that, in the face of the potential layoff of correction officers due to the closing of LCI, "the [ODRC] and OCSEA agree to place the following employee into the position as indicated below" on the effective date. Then, the documents listed the employee's name, classification, number, and the new location for the placement as "WCI." The final paragraph contained wording reflecting the terms of Section 18.14 of the CBA, as stated above. Each agreement was signed by a representative of the OCSEA, by the ODRC, and by the employee.

{¶16} Appellees maintain that these were two-party agreements between the ODRC and the OCSEA, as reflected in the title of the document and the language of the first paragraph, and that the employees' signatures were only for purposes of acknowledgment as to placement. Appellants contend that this was a

three-party contract, as evidenced by the requirement of their signature in order to effectuate the placements. Although the wording of these Agreements is certainly not a model of clarity, our decision in this case is not dependent upon who were the actual parties to the 18.14 Agreements.

{¶17} Appellants now argue that "[t]he purpose of the independent '18.14 Agreements,' is to continue the employee's seniority and recall rights outside the then existing CBA in force and effect beyond the CBA life cycle." (Appellants' Brief, p. 10.) However, nowhere on the face of the Agreements is there any statement concerning seniority rights. Nor is there any statement that would indicate the Agreements were "outside the existing CBA in force" or as to their existence relative to the existing CBA. Although they claim that the Agreements were somehow "independent" of the CBA, the terms of the Agreements echo section 18.14 of the CBA and even the name of the Agreements comes from the relevant section of the CBA.

{¶18} Appellees maintain that the sole purpose of the 18.14 Agreement was to provide a one-time placement for employees who were about to be laid off, allowing them to move to another ODRC placement and precluding any other ODRC employees who might have wanted to apply for that position from filing a grievance over the placement. We find that this is all that is within the plain language of the 18.14 Agreements. Although the Agreements allowed Appellants

to retain "recall and reemployment rights," there is no language concerning "seniority" within the 18.14 Agreements or even anywhere within Article 18 of the CBA. In their Reply Brief, Appellants argue that "reemployment rights include institutional seniority, which are earned rights through longevity of employment ***." Again, we do not find that language, or any reference to seniority, in the 18.14 Agreements or Article 18 of the CBA. Furthermore, determining the meaning of "reemployment rights" would involve an interpretation of the CBA, which is a matter subject to the procedures in R.C. 4117, not a matter for the courts.

{¶19} The 18.14 Agreements permitted Appellants to be "placed" at WCI, and then allowed for their subsequent recall and reemployment at ACI. There is no evidence or support for the proposition that these Agreements were intended to be applicable to a completely separate employment decision that was made in 2010 concerning Appellants' seniority. In any case, this would still involve the interpretation of a CBA, which places the dispute clearly within the purview of R.C. 4117. The language of the statute is unambiguous in that R.C. 4117 controls *"[a]ll matters* pertaining to wages, hours, or terms and other conditions of employment." (Emphasis added.) R.C. 4117.08(A). Institutional seniority rights are definitely matters pertaining to the terms and conditions of employment.

{¶20} Appellants also represented in their brief and verified complaint that, *until March 16, 2010*, they had institutional seniority dates that coincided with their original employment dates at ACI in 1996 and 1997. Appellants stated that on March 16th, the OCSEA and the ODRC notified them that they had entered into a "Settlement Agreement" adjusting their seniority. They contend that this "Settlement Agreement," six years after the original 18.14 Agreements, was a breach of those placement Agreements. However, the facts in the record do not support Appellants' representations. The March 2010 Settlement Agreement between the union and the ODRC was merely an agreement deciding on the method that would be utilized to allow Appellants to bid on new positions as a result of the fact that *their seniority had previously been reduced by a Seniority Tribunal earlier in the year*. The Settlement Agreement was simply a means of resolving their bid position situation.

{¶21} The actual decision that resulted in the reduction/recalculation of Appellants' institutional seniority was the result of a Seniority Tribunal assessment made months earlier. Appellants were notified of this reduction in their institutional seniority on January 18, 2010, when the OCSEA Seniority Tribunal sent letters to both Crouch and Briley informing them of the tribunal's actions. However, Appellants never mentioned this critical decision in their

complaint or their appeal, nor did they address its implications as to their claims.

The letters that were sent to Appellants in January 2010 stated:[3]

> **Your institutional seniority date was challenged by a member of your chapter.  The Tribunal reviewed your Employee History \*\*\* and determined that you did not return to work until after your recall/reemployment rights had expired.  In other words these rights only last for 24 months and you did not return to the institution until after your right to unbroken institutional seniority had expired.  \*\*\***
>
> **If you disagree with the Seniority Tribunal's finding, and you have new information which the Seniority Tribunal has not previously received, then you may send an appeal letter within ten (10) days \*\*\*.**

{¶22} It was *this decision in 2010 by the OCSEA Seniority Tribunal that modified Appellants' seniority*.  This is clearly a matter that is applicable to Appellants' rights under the current CBA and is a matter that is subject to the procedures set forth in R.C. 4117 for resolving employment issues dealing with collective bargaining union issues.  If Appellants believe that the Seniority Tribunal's decisions were erroneous because of reemployment and seniority rights they believe they were entitled to have, then this is a matter that should have been appealed to the Seniority Tribunal.[4]

---

[3] This excerpt is from the letter sent to Couch.  Briley's letter was essentially the same, although the finding in a few sentences was slightly different stating, "The Seniority Tribunal reviewed your Employee History \*\*\* and determined that your \*\*\* institutional seniority began anew when you transferred back in from Warren Correctional Institution.  It appears that you were incorrectly granted unbroken institutional seniority when you originally transferred back in.  \*\*\*"

[4] Appellants have not provided any information as to whether or not they availed themselves of the appeal process specified in the January 28, 2010 letters.

{¶23} The 18.14 Agreements pertained to Appellants' placements at WCI, which occurred in 2004. They were since recalled to ACI. Appellants' terms and conditions of employment at ACI, and their seniority rights, are governed by the same, current CBA that governs the terms and conditions of the employment of all of the other corrections officers at ACI and 35,000 other civil service employees throughout the state. If Appellants were still convinced that their union did not properly represent their interests and treat them fairly, then their options were to follow the procedures set forth in the CBA and R.C. 4117 as to filing grievances and unfair labor practices charges.

{¶24} Furthermore, there is no merit to Appellants' claims that their rights to contract have been unfairly curtailed. An employee who joins a representative bargaining unit "will generally be deemed to have relinquished his or her right to act independently of the union in all matters related to or arising from the contract, except to the limited extent that the agreement explicitly provides to the contrary." *Leon v. Boardman Twp.*, 100 Ohio St.3d 335, 2003-Ohio 6466, 800 N.E.2d 12, ¶17. "Sound labor policy disfavors an individualized right of action because it tends to vitiate the exclusivity of union representation, disrupt industrial harmony, and, in particular, impede the efforts of the employer and union to establish a uniform method for the orderly administration of employee grievances." Id.

**{¶25}** The trial court correctly recognized that Appellants' claims are a seniority dispute governed by the terms and conditions of employment established in a CBA between the parties, and that it did not have subject matter jurisdiction pursuant to R.C. 4117. While it may well be true that Appellants were not treated fairly by their union and their employer, it is not a matter that can be remedied in the court system. Based upon our findings above, Appellants' first and second assignments of error are overruled.

**{¶26}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**