O’Donnell, J.
{¶ 1} The issue in this case is whether a probate court may exercise its exclusive jurisdiction over adoption proceedings while a juvenile court is concurrently exercising continuing jurisdiction over a child custody proceeding.
{¶ 2} The Allen County Children Services Board (“Board”) commenced this action seeking a writ of prohibition barring the Probate Division of the Mercer County Common Pleas Court (“Probate Court”) and Judges Mary Pat Zitter and James Rapp from exercising jurisdiction over M.S., a minor child.[1] At that time, the child was in the temporary custody of the Board by order of the Juvenile Division of the Allen County Common Pleas Court (“Juvenile Court”). The Probate Court and the Juvenile Court both assert jurisdiction over the child’s residential placement.
{¶ 3} On June 1, 2016, this court granted a peremptory writ of prohibition precluding the Probate Court from “exercising jurisdiction in the case captioned In the Matter of the Placement and Adoption of M.A.S.A., Mercer County Common Pleas Court, Probate Division, case No. 2016 5005, consistent with the opinion to follow.” 146 Ohio St.3d 1404, 2016-Ohio-3255, 50 N.E.3d 571. Before this court issued an opinion, the Probate Court and Judges Zitter and Rapp moved for reconsideration.
*231 {¶ 4} We grant the motion for reconsideration, hold that the Probate Court acted within its jurisdiction and in accordance with its statutory authority in placing M.S. for adoption with Brian and Kelly Anderson with the consent of her mother, and rescind the peremptory writ of prohibition issued on June 1, 2016. Accordingly, for the reasons stated in this opinion, we deny the requested writ.[2]
Facts and Procedural History
{¶ 5} M.S. was born on July 24, 2014, and she tested positive for cocaine at or about the time of her birth. On August 7, 2014, the Board removed the child from her mother pursuant to an ex parte emergency custody order and placed her in the foster care of Brian and Kelly Anderson.
{¶ 6} At a hearing on August 8, 2014, the Juvenile Court found probable cause to believe that M.S. was subject to immediate harm from abuse or neglect and placed her in the shelter care of the Board. After the Board filed a dependency complaint on M.S.’s behalf, the Juvenile Court declared her to be dependent and abused and subsequently ordered the child placed in the temporary custody of the Board.
{¶ 7} On November 13, 2015, the Andersons moved to intervene in the Juvenile Court case and sought legal custody of M.S. That same day, M.S.’s mother filed a document agreeing to the Andersons’ intervention and objecting to any plan that would place M.S. in the care or custody of the mother’s sister, who resides in Indiana and has custody of M.S.’s half-brother by order of a West Virginia court. The Board on January 4, 2016, moved to modify the temporary-custody order and place M.S. in the legal custody of M.S.’s aunt and to terminate “all Court-ordered services” by the Board. In response, M.S.’s mother asked the court to designate the Andersons as legal custodians.
{¶ 8} On or about March 16, 2016, the Board removed M.S. from the Andersons’ home and placed her with her aunt.
{¶ 9} On March 28, 2016, M.S.’s mother filed an application in the Probate Court, asking the court to place M.S. “for the purpose of adoption” with the Andersons. The Andersons petitioned the Probate Court to adopt M.S. on March 31, 2016, submitting an application for placement for the'purpose of adoption signed by M.S.’s mother, who appeared before the Probate Court and executed her consent to the adoption. The Probate Court approved the application for placement that same day and ordered the Board to release M.S. to the custody of the Andersons’ attorney.
*232 {¶ 10} In response to this order, the Board filed an emergency ex parte motion in the Juvenile Court seeking an order preventing removal of the child from her current placement. On April 1, 2016, the Juvenile Court granted the motion, asserting exclusive, original, and continuing jurisdiction over the child. It also denied the Andersons’ motion to intervene in the Juvenile Court case, stating that “[fjoster parents have no right under the rules of juvenile procedure to participate as parties in the adjudication of the rights of natural parents.” The Juvenile Court expressed concern that the Andersons, who as foster parents serve as agents of the Board, were instead “acting as independent free agents and well outside their role as caregivers” by contemplating adoption of the child despite the Board’s goal of placing her in the legal custody of her aunt.
{¶ 11} Based on the Juvenile Court’s order, the Board did not release the child and instead moved to stay proceedings in the Probate Court. The Andersons then sought to have the Board held in contempt of court for its failure to surrender custody of M.S. as ordered.
{¶ 12} Meanwhile, on April 26, 2016, the Juvenile Court denied the Andersons’ renewed motion to intervene. In its order, the court quoted In re Adoption of Asente, 90 Ohio St.3d 91, 92, 734 N.E.2d 1224 (2000), for “the bedrock proposition that once a court of competent jurisdiction has begun the task of deciding the long-term fate of a child, all other courts are to refrain from exercising jurisdiction over that matter.” It then observed that the Juvenile Court exercised jurisdiction over the child first, that it was exercising its continuing jurisdiction under R.C. 2151.415(E) and there were “two separate motions relating to the custody of the Child” pending, and that the Probate Court’s approval of a placement for adoption did not confer party status on the Andersons in the Juvenile Court.
{¶ 13} On April 27, 2016, the Probate Court ruled that it had jurisdiction to proceed with the adoption, denied the Board’s motion for stay, scheduled a hearing on the motion for contempt, and set the adoption petition for final hearing.
{¶ 14} The Board filed this complaint for a writ of prohibition against the Probate Court and Judges Zitter and Rapp on May 10, 2016. This court granted a peremptory writ of prohibition on June 1, 2016, with an opinion to follow announcement of the decision. 146 Ohio St.3d 1404, 2016-Ohio-3255, 50 N.E.3d 571.
{¶ 15} It is not clear what actions, if any, the Juvenile Court has taken since release of our decision in this case. Pursuant to R.C. 2151.415(D)(4), the Juvenile Court’s temporary-custody order would have expired, at the latest, on August 8, 2016, which is two years from the date of the shelter-care order.
*233 {¶ 16} The Probate Court and Judges Zitter and Rapp now seek reconsideration of our June 1, 2016 entry, asserting that prohibiting the Probate Court from exercising jurisdiction has deprived M.S.’s mother of her constitutional rights, that Ohio law provides for the Juvenile Court and the Probate Court to have concurrent jurisdiction in these circumstances, and that the adoption statutes were intended to ensure the child a permanent home in an expeditious manner. They contend that until the Board has terminated parental rights, it has no right to select the adoptive family for the child, because the adoption statutes expressly provide that parents retain the right to consent to an adoption notwithstanding the grant of temporary custody to the Board. They contend that granting the writ in this case has therefore prevented M.S.’s mother from exercising her residual rights.
{¶ 17} The Board responds that this court’s writ did not affect the mother’s right to consent to an adoption but rather reflected that the Juvenile Court had authority to divest her of the right to decide where M.S. will live once it found that M.S. was an abused, neglected, or dependent child. The Board asserts that the mother has not been deprived of due process, because the Revised Code precludes the Probate Court from adjudicating an adoption petition only while M.S. is subject to the Juvenile Court’s temporary-custody order. The Board notes that it is not necessary for M.S. to be adopted in order to provide her a permanent and stable home, because a grant of legal custody to her biological aunt may be in the child’s best interest. And it asserts that this court should not permit “a biological parent who has failed to adequately care for his/her children and who does not like the decisions of the public children services agency and the juvenile court to collude with others to adopt the very same children who the parents have abused, neglected, or caused to be dependent.”
{¶ 18} Accordingly, we are called upon to reconcile the conflicting claims of jurisdiction asserted by the Juvenile Court and the Probate Court.
Law and Analysis
{¶ 19} To be entitled to a writ of prohibition, the Board must establish the exercise of judicial power, that the exercise of that power is unauthorized by law, and that denying the writ would result in injury for which no adequate remedy exists in the ordinary course of law. State ex rel. Elder v. Camplese, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13. Even if an adequate remedy exists, a writ may be appropriate when the lack of jurisdiction is patent and unambiguous. State ex rel. V.K.B. v. Smith, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 9.
{¶ 20} The Board contends that the Probate Court’s exercise of jurisdiction is unauthorized by law because the Juvenile Court has original, exclusive jurisdiction over M.S.
*234 {¶ 21} A juvenile court has “exclusive original jurisdiction * * * [Concerning any child who on or about the date specified in the complaint * * * is alleged * * * to be a * * * delinquent, unruly, abused, neglected, or dependent child.” R.C. 2151.23(A)(1). The juvenile court must hold an adjudicatory hearing— generally within 30 days after the complaint was filed—to determine whether the child is abused, neglected, or dependent. R.C. 2151.28(A)(2) and (B). If it determines that the child is an abused, neglected, or dependent child, the court must hold a dispositional hearing within 30 days after the adjudicatory hearing and within 90 days after the complaint was filed. R.C. 2151.28(B)(3) and 2151.35(A)(1) and (B)(1). Following the dispositional hearing, the court must issue one of the dispositional orders authorized by R.C. 2151.353(A), which include: (1) committing the child to the temporary custody of a public children-services agency, a private child-placing agency, a parent, a relative, or a probation officer, (2) awarding legal custody to either parent or to a person who moves for legal custody prior to the dispositional hearing, or (3) committing the child to the permanent custody of a public children-services agency or private child-placing agency. R.C. 2151.353(A)(2) through (4).
{¶ 22} The juvenile court “shall retain jurisdiction over any child for whom the court issues an order of disposition” pursuant to R.C. 2151.353(A) until the child reaches the age of 18 or 21 years or until “the child is adopted and a final decree of adoption is issued.” R.C. 2151.353(F)(1). The retained jurisdiction following a dispositional order issued pursuant to R.C. 2151.353(A)—including an order of temporary custody under R.C. 2151.353(A)(2)—-is “continuing jurisdiction,” R.C. 2151.417(B), subject to termination by an adoption decree.
{¶ 23} Thus, a juvenile court’s exclusive jurisdiction terminates upon the issuance of a dispositional order pursuant to R.C. 2151.353(A). At that time, the juvenile court will have conducted at least two hearings, adjudicated the child an abused, neglected, or dependent child, issued a disposition, and retained continuing jurisdiction pursuant to R.C. 2151.353(F)(1) and 2151.417(B). The fact that temporary custody cannot extend beyond two years, see R.C. 2151.415(D)(4), does not alter the nature of the continuing jurisdiction remaining with a juvenile court that issues a disposition of temporary custody. The Juvenile Court’s exclusive jurisdiction over M.S. granted by R.C. 2151.23(A)(1) therefore ended after it adjudicated her an abused, neglected, or dependent child and issued a disposition of temporary custody, and it is now exercising continuing jurisdiction over the child.
{¶ 24} In contrast to the juvenile court’s continuing jurisdiction over an abused, neglected, or dependent child, “the original and exclusive jurisdiction over adoption proceedings is vested in the probate court,” In re Adoption of Pushcar, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, ¶ 9, and the adoption statutes *235 broadly permit “[a]ny minor” to be adopted by “[a] husband and wife together, at least one of whom is an adult,” R.C. 3107.02(A) and 3107.03(A).
{¶ 25} A prerequisite to adoption is the placement of the child with the prospective adoptive parents. See R.C. 3107.051(A) (requiring filing of adoption petition within 90 days after the child is placed in the petitioner’s home); R.C. 3107.11(A) (stating that adoption hearing may take place 30 days after the child is placed with the petitioner). Generally, only a public children-services agency or a state-certified child-placement institution or association may place a child for adoption. R.C. 5103.16(D). Here, no public children-services agency or state-certified child-placement institution or association placed M.S. for adoption with the Andersons.
{¶ 26} However, R.C. 5103.16(D)(1) permits the parent or parents of a child to arrange a private adoption without going through an authorized agency by appearing personally and applying to the probate court for approval of a proposed adoptive placement. Upon application, and if other statutory conditions are met, the probate court may approve the placement, R.C. 5103.16(D)(1) through (3), at which time “the prospective adoptive parent with whom the child is placed has care, custody, and control of the child pending further order of the court,” R.C. 5103.16(D).
{¶ 27} After 30 days following the date on which the child was placed in the home of the petitioner, the probate court must conduct a hearing. R.C. 3107.11(A). If all required consents have been obtained and the adoption is in the best interest of the child, then the court may issue a final or interlocutory decree of adoption. R.C. 3107.14(C). An interlocutory decree permits further observation and investigation of the adoptive home to determine the suitability of the adoptive parents, id., and a final decree terminates the parental rights of both parents, R.C. 3107.15(A)(1). If the probate court does not approve the adoption, its options include returning the child to the agency or person that had custody prior to the filing of the adoption petition or certifying the matter to the juvenile court “for appropriate action and disposition.” R.C. 3107.14(D).
{¶ 28} We have recognized that a parent need not have physical custody of the child to utilize the procedure for private adoptive placement in R.C. 5103.16(D). In re Adoption of J.A.S., 126 Ohio St.3d 145, 2010-Ohio-3270, 931 N.E.2d 554, ¶ 21 (“Although the statute requires the biological parents to seek court approval of placement, this does not mean that the children must physically be with the biological parents in order for them to file”).
{¶ 29} Rather, the parent’s right to consent to an adoption of a child subject to the juvenile court’s continuing jurisdiction depends on the dispositional order that the court entered and whether it grants temporary or permanent legal custody.
*236 {¶ 30} “Temporary custody” means “legal custody of a child who is removed from the child’s home, which custody may be terminated at any time at the discretion of the court * * *.” R.C. 2151.011(B)(56).
{¶ 31} “Legal custody” is “a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.” (Emphasis added.) R.C. 2151.011(B)(21). In turn, “residual parental rights, privileges, and responsibilities” is defined to mean “those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child’s religious affiliation, and the responsibility for support.” (Emphasis added.) R.C. 2151.011(B)(49).
{¶ 32} “Permanent custody” is different from legal custody. It means “a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations.” (Emphasis added.) R.C. 2151.011(B)(32).
{¶ 33} As we recognized in In re C.R., 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, “[t]he important distinction is that an award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities.” (Emphasis added.) Id. at ¶ 17. Legal custody is “subject to” residual parental rights, R.C. 2151.011(B)(21), which include the parents’ right to consent to an adoption, and the phrase “subject to” denotes “a contingent relation” that may be “conditioned, affected, or modified in some indicated way,” Webster’s Third New International Dictionary 2275 (1986). Thus, a third party takes legal custody of a child subject to a parent’s residual right to consent to an adoption, and the exercise of the right to consent to adoption necessarily affects a temporary legal custodian’s right to determine the child’s placement.
{¶ 34} Importantly, nothing in the statutes expressly precludes the probate court from exercising its jurisdiction in adoption proceedings regarding a child who is the subject of custody proceedings in the juvenile court. Rather, because R.C. 2151.353(F)(1) provides that a final adoption decree terminates the juvenile court’s jurisdiction, the General Assembly necessarily granted the probate court jurisdiction to conduct adoption proceedings during the pendency of custody proceedings in the juvenile court.
*237 {¶35} Moreover, in contrast to the right the statute grants to parents, the legislature has not granted temporary legal custodians a statutory right to consent to an adoption. Had the legislature intended a temporary dispositional order to be a barrier to adoption in these circumstances, it could have required the consent of the temporary custodian or the juvenile court, but it did not. And although a prospective adoptive parent need not obtain consent from “[a]ny guardian, custodian, or other party who has temporary custody of the child,” R.C. 3107.07(L), a temporary custodian is entitled to notice from the probate court of a hearing on an adoption petition, R.C. 3107.11(A)(3). Thus, the General Assembly envisioned that adoption proceedings may overlap with juvenile court proceedings when a temporary custody order is in place.
{¶ 36} Accordingly, the authority of the probate court to order preadoption placement pursuant to R.C. 5103.16(D) is therefore within its exclusive, original jurisdiction over adoption proceedings, notwithstanding the fact that the child is subject to the continuing jurisdiction of the juvenile court.
{¶ 37} This view is consistent with our decision in Pushcar, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, which held that “[wjhen an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child,” id. at the syllabus. Notably, we did not hold that the probate court lacked jurisdiction—Pushcar was not a prohibition action, and we did not question the appellate court’s recognition that “the probate court did have jurisdiction to consider the petition for adoption,” id. at ¶ 7. Rather, the point in Pushcar was that pursuant to the adoption statutes, the probate court could not proceed with the adoption without the consent of the putative father, and only the juvenile court could decide the question of the child’s paternity. See generally R.C. 2151.23(B)(2) and 3111.06. We therefore concluded that “the probate court should have deferred to the juvenile court and refrained from proceeding with the adoption petition until the juvenile court had adjudicated the pending matter.” (Emphasis added.) Pushcar at ¶ 14.
{¶38} Notably, we have since clarified in In re G.T.B., 128 Ohio St.3d 502, 2011-Ohio-1789, 947 N.E.2d 166, ¶ 10 and fn. 2, that Pushcar required the probate court to refrain from proceeding while there was a question of parentage—i.e., paternity—pending in the juvenile court.
{¶ 39} Nor is our holding that the Probate Court has jurisdiction to proceed in this matter inconsistent with this court’s decision in Asente, 90 Ohio St.3d 91, 734 N.E.2d 1224. There, we stated that it was a “bedrock proposition that once a court of competent jurisdiction has begun the task of deciding the long-term fate of a child, all other courts are to refrain from exercising jurisdiction over that matter.” Id. at 92. However, Asente concerned an interstate custody dispute and the application of the former Uniform Child Custody Jurisdiction Act and the *238 Parental Kidnapping Protection Act to determine whether Kentucky or Ohio had jurisdiction over a child, because the courts of only one state, the child’s “home state,” had exclusive jurisdiction over child-custody proceedings. This case involves different statutes that grant the probate court jurisdiction to proceed on the adoption of abused and dependent children who are the subject of a temporary-custody order and the continuing jurisdiction of the juvenile court. Thus, Asente does not guide our decision in this case.
{¶ 40} Here, the Juvenile Court exercised exclusive jurisdiction over M.S. when it adjudicated her a dependent and abused child and when it issued a dispositional order awarding temporary custody of M.S. to the Board. Thereafter, the Juvenile Court retained continuing jurisdiction, which will terminate when M.S. reaches the age of 18 or 21 or when she is adopted, see R.C. 2151.353(F)(1). The Juvenile Court’s continuing jurisdiction does not, however, divest the Probate Court of its exclusive, original jurisdiction over adoption proceedings. And M.S.’s mother’s residual parental right to consent to adoption and preadoption placement therefore supersedes the Board’s right to decide M.S.’s residential placement as part of its temporary custody.
{¶ 41} Accordingly, we recognize that the Probate Court has jurisdiction to consider the adoption of M.S., and we therefore rescind the peremptory writ of prohibition issued on June 1, 2016, and deny the requested writ.
Motion for reconsideration granted and writ denied.
Pfeifer, Lanzinger, and French, JJ., concur.
O’Connor, C.J., dissents, with an opinion joined by O’Neill, J.
O’Neill, J., dissents, with an opinion joined by O’Connor, C.J.
Kennedy, J., not participating.

. Judge Zitter is a common pleas judge in Mercer County. Judge Rapp is presiding over the case pursuant to assignment No. 16JA0734 by the chief justice, effective April 1, 2016.

. Based on this disposition, we deny the motion for leave to supplement the motion for reconsideration as moot.