[Cite as *In re Adoption of H.W.*, 2018-Ohio-460.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

IN RE:  THE PLACEMENT OF:

    H.W.

CASE NO.  16-17-05

[MARY WALTON - APPELLANT]            O P I N I O N
[MARK WALTON - APPELLANT]

IN RE:  THE ADOPTION OF:

    H.W.

CASE NO.  16-17-06

[MARY WALTON - APPELLANT]            O P I N I O N
[MARK WALTON - APPELLANT]

**Appeals from Wyandot County Common Pleas Court
Probate Division
Trial Court Nos. 20175010 and 20175011**

**Judgments Reversed and Cause Remanded**

**Date of Decision:  February 5, 2018**

APPEARANCES:

    *James W. Fruth* for Appellant

Case Nos. 16-17-05, 16-17-06

**PRESTON, J.**

{¶1} Petitioners-appellants, Mark A. Walton and Mary E. Walton (the "Waltons"), appeal the September 20, 2017 decision of the Wyandot County Court of Common Pleas, Probate Division ("Probate Court"), concluding that it did not have jurisdiction to determine the Waltons' petition to adopt H.W. For the reasons that follow, we reverse.

{¶2} This case stems from a petition to adopt H.W. filed by the Waltons on July 11, 2017 in the Probate Court. (Case No. 20175011, Doc. No. 1). The facts of this case are intertwined with an abuse, neglect, and dependency case involving H.W. in the Sandusky County Court of Common Pleas, Juvenile Division ("Juvenile Court").

{¶3} H.W., who tested positive for drugs when he was born in June 2015, was placed in the foster care of the Waltons after the Sandusky County Department of Job and Family Services ("SCDJFS") was granted temporary custody of H.W. on July 15, 2015. (*See* Case No. 20175011, Doc. Nos. 2, 24). The SCDJFS removed H.W. from the foster care of the Waltons on October 26, 2016 "due to safety concerns for [H.W.] if he remained in [the Waltons'] home." (Case No. 20175011, Doc. No. 5).

{¶4} The same day that the Waltons filed their petition to adopt H.W., H.W.'s biological parents filed in the Probate Court applications of "Consent for

Placement of Child for Private Adoption" consenting to the placement of H.W. with the Waltons for the purpose of adoption. (Case No. 20175010, Doc. Nos. 1, 2). The Waltons previously adopted H.W.'s half-sister. (*See* Case No. 20175010, Doc. No. 7). Two days after the Waltons filed their petition to adopt H.W., a permanent-custody hearing was held in the Juvenile Court. (*See* Case No. 20175010, Doc. No. 10); (Case No. 20175011, Doc. No. 6).

{¶5} On July 20, 2017, the SCDJFS objected to the Waltons's petition to adopt H.W. (Case No. 20175010, Doc. No. 3); (Case No. 20175011, Doc. No. 2). The next day, the Waltons filed a "Motion to Strike Pleadings" arguing that the SCDJFS "lacks standing in this matter and is not a party to this proceeding." (Case No. 20175010, Doc. No. 5); (Case No. 20175011, Doc. No. 4). On August 7, 2017, the SCDJFS filed a motion to intervene in the Probate Court case. (Case No. 20175010, Doc. No. 9); (Case No. 20175011, Doc. No. 5). That same day the SCDJFS filed its answer to the Waltons' petition to adopt H.W. (Case No. 20175010, Doc. No. 10); (Case No. 20175011, Doc. No. 6).

{¶6} On August 8, 2017, the Waltons objected to the SCDJFS motion to intervene in the Probate Case. (Case No. 20175010, Doc. No. 15); (Case No. 20175011, Doc. No. 7).

{¶7} On September 19, 2017, the SCDJFS moved to dismiss the Waltons' petition to adopt H.W. because the Juvenile Court "filed a Judgment Entry granting

the [SCDJFS] Permanent Custody of [H.W.] on September 13, 2017." (Case No. 20175010, Doc. No. 39); (Case No. 20175011, Doc. No. 24). (*See also* Case No. 20175010, Doc. No. 40); (Case No. 20175011, Doc. No. 25).

{¶8} On September 20, 2017, the Probate Court issued an entry concluding that it lacked jurisdiction to consider the Waltons' petition. (Case No. 20175010, Doc. No. 41); (Case No. 20175011, Doc. No. 26). In its entry, the Probate Court "dismissed" "all pending motions." (*Id.*); (*Id.*).

{¶9} The Waltons filed "Motion to Reconsider and Stay Judgment Entry of September 20, 2017 and Memorandum in Opposition to Motion to Dismiss" on September 20, 2017. (Case No. 20175010, Doc. No. 42); (Case No. 20175011, Doc. No. 27). On September 22, 2017, the SCDJFS filed "Motion to Dismiss Petitioners [sic] Motion to Reconsider and Stay Judgment Entry." (Case No. 20175010, Doc. No. 43); (Case No. 20175011, Doc. No. 28). On October 3, 2017, the Probate Court denied the Waltons' motion. (Case No. 20175010, Doc. No. 44); (Case No. 20175011, Doc. No. 29).

{¶10} On October 9, 2017, the Waltons filed their notice of appeal of the Probate Court's September 20, 2017 and October 3, 2017 entries. (Doc. No. 194). They raise one assignment of error for our review.

**Assignment of Error**

**The Wyandot County Probate Court Erred in Finding that it Lacked Jurisdiction Over the Appellants' Adoption Petition**

-4-

**{¶11}** In their assignment of error, the Waltons argue that the trial court erred by concluding that it lacked jurisdiction to consider their petition to adopt H.W. In particular, the Waltons argue that, under *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court, Prob. Div.*, 150 Ohio St.3d 230, 2016-Ohio-7382, exclusive, original jurisdiction vested with the Probate Court to determine their petition to adopt H.W. at the time they filed their petition.

**{¶12}** As an initial matter, we must address the participation of the SCDJFS in this case. The SCDJFS is not a party to the adoption proceeding—that is, the Probate Court dismissed all motions pending in the case when it concluded that it did not have jurisdiction to determine the adoption petition. Stated another way, the Probate Court denied the SCDJFS's motion to intervene in the case.

**{¶13}** Because the SCDJFS is not a party to the case, it follows that documents filed by the SCDJFS are not properly part of the record. Indeed, because the SCDJFS is not a party to the adoption proceeding, we sustained the Waltons' motion to strike the "appellees" brief filed by the SCDJFS.[1] *See Short v. Short*, 4th Dist. Pike No. 12CA834, 2014-Ohio-5684, ¶ 14-15, quoting *Hokes v. Ford Motor Co.*, 9th Dist. Summit No. 22602, 2005-Ohio-5182, ¶ 6. *See also Burton Carol Mgt., LLC v. Ziegler*, 11th Dist. Lake No. 2014-L-130, 2015-Ohio-4924, ¶ 2;

---

[1] On January 11, 2018, this court granted the SCDJFS's motion for leave to file a brief of amicus curiae and considered its brief filed November 20, 2017 for that purpose.

*Ambrosia Coal & Constr. Co. v. C.B.G. Inc.*, 7th Dist. Mahoning No. 00CA101, 2001 WL 1123901, *2 (Sept. 14, 2001). Moreover, neither this court, nor the trial court, can consider evidence that is not part of the official record. *See Raymond Builders Supply, Inc. v. Slapnicker*, 11th Dist. Ashtabula No. 2003-A-0040, 2004-Ohio-1437, ¶ 10 ("Neither this court, nor the trial court, can consider evidence that is not part of the official record.").

{¶14} Turning to the Waltons' argument, "[t]he lack of subject matter jurisdiction is a question of law and addresses whether the plaintiff has alleged any cause of action over which the court has authority to decide." *Couch v. Ohio Civ. Serv. Emps. Assn.*, 3d Dist. Allen No. 1-10-45, 2010-Ohio-6258, ¶ 10, citing *McHenry v. Indus. Comm. of Ohio*, 68 Ohio App.3d 56, 62 (4th Dist.1990). An appellate court reviews de novo a trial court's dismissal for lack of subject matter jurisdiction. *Id.*, citing *Antram v. Upper Scioto Valley Local School Dist. Bd. of Edn.*, 3d Dist. Hardin No. 6-08-04, 2008-Ohio-5824, ¶ 6. "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.).

{¶15} The Supreme Court of Ohio addressed the jurisdiction of a Juvenile Court and a Probate Court in cases concerning a child that is part of an abuse, neglect, and dependency case and a private-adoption case:

A juvenile court has "exclusive original jurisdiction * * * [c]oncerning any child who on or about the date specified in the complaint * * * is alleged * * * to be a * * * delinquent, unruly, abused, neglected, or dependent child." R.C. 2151.23(A)(1).

* * *

The juvenile court "shall retain jurisdiction over any child for whom the court issues an order of disposition" pursuant to R.C. 2151.353(A) until the child reaches the age of 18 or 21 years or until "the child is adopted and a final decree of adoption is issued." R.C. 2151.353(F)(1). The retained jurisdiction following a dispositional order issued pursuant to R.C. 2151.353(A)—including an order of temporary custody under R.C. 2151.353(A)(2)—is "continuing jurisdiction," R.C. 2151.417(B), subject to termination by an adoption decree.

Thus, a juvenile court's exclusive jurisdiction terminates upon the issuance of a dispositional order pursuant to R.C. 2151.353(A).

* * *

> In contrast to the juvenile court's continuing jurisdiction over an abused, neglected, or dependent child, "the original and exclusive jurisdiction over adoption proceedings is vested in the probate court," *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, ¶ 9, and the adoption statutes broadly permit "[a]ny minor" to be adopted by "[a] husband and wife together, at least one of whom is an adult," R.C. 3107.02(A) and 3107.03(A).

*State ex rel. Allen Cty. Children Servs. Bd.*, 150 Ohio St.3d 230, 2016-Ohio-7382, at ¶ 21-24.

{¶16} "R.C. 5103.16(D)(1) permits the parent or parents of a child to arrange a private adoption without going through an authorized agency by appearing personally and applying to the probate court for approval of a proposed adoptive placement." *Id.* at ¶ 26. The Supreme Court of Ohio "recognized that a parent need not have physical custody of the child to utilize the procedure for private adoptive placement in R.C. 5103.16(D)." *Id.* at ¶ 28, citing *In re Adoption of J.A.S.*, 126 Ohio St.3d 145, 2010-Ohio-3270, ¶ 21 ("Although the statute requires the biological parents to seek court approval of placement, this does not mean that the children must physically be with the biological parents in order for them to file."). "Rather, the parent's right to consent to an adoption of a child subject to the juvenile court's

continuing jurisdiction depends on the dispositional order that the court entered and whether it grants temporary or permanent legal custody." *Id.* at ¶ 29.

{**¶17**} As the Supreme Court explained, "'[t]emporary custody' means '*legal custody* of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court.'" (Emphasis added.) *Id.* at ¶ 30, quoting R.C. 2151.011(B)(56).

> "'Legal custody' is 'a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all *subject to any residual parental rights*, privileges, and responsibilities.'"

(Emphasis added.) *Id.* at ¶ 31, quoting R.C. 2151.011(B)(21).

> "In turn, 'residual parental rights, privileges, and responsibilities' is defined to mean 'those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, *consent to adoption*, the privilege to determine the child's religious affiliation, and the responsibility for support.'"

(Emphasis added.) *Id.*, quoting R.C. 2151.011(B)(49).

"'Permanent custody' is different from legal custody. It means 'a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, *including the right to consent to adoption*, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, *including all residual rights and obligations*."

(Emphasis added.) *Id.* at ¶ 32, quoting R.C. 2151.011(B)(32).

{¶18} "'The important distinction is that an award of legal custody of a child does *not* divest parents of their residual parental rights, privileges, and responsibilities." (Emphasis added.) *Id.* at ¶ 33, quoting *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17.

{¶19} "Accordingly, the authority of the probate court to order preadoption placement pursuant to R.C. 5103.16(D) is therefore within its exclusive, original jurisdiction over adoption proceedings, notwithstanding the fact that the child is subject to the continuing jurisdiction of the juvenile court." *Id.* at ¶ 36.

{¶20} In this case, the Juvenile Court's exclusive, original jurisdiction over H.W. granted by R.C. 2151.23(A)(1) terminated after it adjudicated him an abused, neglected, or dependent child and issued a disposition of temporary custody. As such, at the time the Waltons filed their petition to adopt H.W., the Juvenile Court

was exercising its continuing jurisdiction over H.W. *Accord id.* at ¶ 23 ("The Juvenile Court's exclusive jurisdiction over M.S. granted by R.C. 2151.23(A)(1) therefore ended after it adjudicated her an abused, neglected, or dependent child and issued a disposition of temporary custody, and it is now exercising continuing jurisdiction over the child."). The Juvenile Court's continuing jurisdiction did not divest the Probate Court of its exclusive, original jurisdiction over the adoption proceedings initiated by the Waltons. *See id.* at ¶ 40.

{¶21} Nevertheless, the Probate Court concluded that it was without jurisdiction to consider the adoption petition since the Juvenile Court awarded permanent custody of H.W. to the SCDJFS on September 13, 2017—evidence that the Probate Court should not have considered since it is not part of the official record. However, the Probate Court was vested with exclusive, original jurisdiction when the Waltons filed their petition to adopt H.W. simultaneously with the consent of H.W.'s biological parents. Stated another way, because H.W. was in the temporary custody of the SCDJFS at the time the Waltons filed their petition to adopt H.W., H.W.'s biological parents retained their residual parental rights, including the ability to consent to adoption. Moreover, that a permanent-custody proceeding was initiated in the Juvenile Court did not alter the continuing jurisdiction of the Juvenile Court. *See id.* at ¶ 21-23. Thus, the Probate Court had

-11-

exclusive, original jurisdiction to determine the Waltons's petition to adopt H.W. *See id.* at ¶ 24.

**{¶22}** For these reasons, we conclude that the Probate Court has exclusive, original jurisdiction to consider the Waltons's petition to adopt H.W. *See id.* at ¶ 41. The Waltons's assignment of error is sustained.

**{¶23}** Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgments of the trial court and remand for further proceedings consistent with this opinion.

*Judgments Reversed and*
*Cause Remanded*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**