**[Cite as *In re M.S.*, 2021-Ohio-2331.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF:<br><br>M.S., B.S., J.S. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Appellate Case Nos. 2021-CA-12<br>2021-CA-13<br>2021-CA-14<br><br>Trial Court Case Nos. 2014-157<br>2014-158<br>2019-547<br><br>(Appeal from Common Pleas<br>Court – Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of July, 2021.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee, CCDJFS

GARY C. SCHAENGOLD, Atty. Reg. No. 0007144, 4 East Schantz Avenue, Dayton, Ohio 45409
    Attorney for Mother

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Appellant Mother appeals from judgments of the Clark County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her children, M.S., B.S., and J.S. and ordered that the children be placed in the permanent custody of the Clark County Department of Job and Family Services ("CCDJFS"). Mother filed a timely notice of appeal on February 16, 2021.[1]

**{¶ 2}** The minor children were born to Mother and Father in November 2012 (J.S.), January 2014 (B.S.), and February 2018 (M.S.). CCDJFS initially became involved with Mother in early 2014 when B.S. tested positive for heroin at birth. On February 11, 2014, CCDJFS filed a complaint in the trial court requesting that it find J.S. and B.S. to be dependent children. Thereafter, J.S. and B.S. were adjudicated dependent; on February 25, 2014, the parties filed an Agreed Entry for Protective Supervision for the children, and on February 27, 2014, the trial court granted an ex parte order placing J.S. and B.S. in the custody of CCDJFS. On March 19, 2014, the trial court filed a judgment entry granting temporary custody of J.S. and B.S. to CCDJFS.

**{¶ 3}** In October 2014, J.S. and B.S. were returned to the legal custody of Mother and Father with an order of protective supervision. In January 2015, the trial court found Mother in contempt for abusing drugs not prescribed to her in violation of her case plan objectives. The trial court then extended the protective order of supervision for J.S. and B.S. for an additional period of six months in April 2015. On July 22, 2015, the trial court terminated the order of protective supervision with respect to J.S. and B.S.

**{¶ 4}** Approximately four years later, on July 8, 2019, CCDJFS filed a complaint

---

[1] At the time of these proceedings, the father of the children was deceased and therefore had no involvement in the case.

and a request for shelter care for J.S. and B.S., as well as the recently born third child, M.S. Specifically, CCDJFS became aware that Mother had been smoking and injecting methamphetamine. The trial court granted the request for shelter care for all three children in an entry filed the same day. The record establishes that Mother agreed to the adjudication of dependency for each of the three children. On September 4, 2019, temporary custody of the three children was awarded to a foster family. On November 19, 2019, CCDJFS filed a motion to modify the temporary custody of the children. In response to the motion, the trial court placed all three children in the interim temporary custody of CCDJFS, and on January 17, 2020, the trial court placed the children in the temporary legal custody of CCDJFS.

{¶ 5} In May 2020, CCDJFS filed a motion to extend temporary custody of the children for another six months in order to allow Mother to complete her case plan objectives. On July 15, 2020, the guardian ad litem (GAL) filed a motion requesting that permanent custody of the children be awarded to CCDJFS. A hearing was held before a magistrate with respect to the GAL's motion August 7 and 10, 2020. On October 8, 2020, the magistrate denied CCDJFS's motion to extend temporary custody, granted the GAL's motion, and ordered that J.S., B.S., and M.S. be placed in the permanent custody of CCDJFS.

{¶ 6} Mother filed objections to the magistrate's decision, and she filed supplemental objections after receipt of the transcript of the hearing before the magistrate. On January 21, 2021, the trial court overruled Mother's objections and adopted the magistrate's decision in its entirety, thereby granting permanent custody of the children to CCDJFS and terminating Mother's parental rights in each case.

{¶ 7} Mother now appeals. Her sole assignment of error is as follows:

THE TRIAL COURT ERRED IN GRANTING THE MOTION OF THE GUARDIAN AD LITEM FOR PERMANENT CUSTODY AND DENYING THE MOTION OF FAMILY AND CHILDREN'S SERVICES OF CLARK COUNTY FOR A FIRST EXTENSION OF TEMPORARY CUSTODY.

{¶ 8} Mother contends that the trial court erred when it granted the GAL's motion for permanent custody and denied CCDJFS's motion for a first extension of temporary custody of J.S., B.S., and M.S. We note that while CCDJFS initially supported an extension of temporary custody at the hearing before the magistrate, it now argues on appeal that it is in the best interest of the children for them to remain in the permanent custody of CCDJFS.

{¶ 9} The United States Supreme Court has described the interest of parents in the care, custody, and control of their children as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The Ohio Supreme Court has recognized that "there is an essential and basic civil right to conceive and raise children." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 39. However, "[t]he fundamental interest of parents is not absolute." *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. "The state has broad authority to intervene to protect children from abuse and neglect." *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court, Prob. Div.,* 150 Ohio St.3d 230, 2016-Ohio-7382, 81 N.E.3d 380 ¶ 58 (O'Connor, C.J., dissenting), citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28.

{¶ 10} A court's decision to terminate parental rights will not be overturned "if the

record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." (Citations omitted.) *In re A.U.*, 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 15. "We review the trial court's judgment for an abuse of discretion." *In re L.C.*, 2d Dist. Clark No. 2010-CA-90, 2011-Ohio-2066, ¶ 14, citing *In re C.F.* at ¶ 48 (applying the abuse-of-discretion standard to trial court's findings under R.C. 2151.414).

{¶ 11} A two-part test applies to determine whether to grant a public children services agency's motion for permanent custody. R.C. 2151.414(B)(1) provides that a court may grant permanent custody if it clearly and convincingly finds that (1) the child's best interest lies in granting permanent custody to the agency, and (2) any of the statutory alternatives apply.

{¶ 12} R.C. 2151.414 provides in relevant part as follows:

(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more

public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 13} In determining a child's best interest, R.C. 2151.414 instructs courts to consider "all relevant factors," including five statutory factors:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1). "No one element is given greater weight or heightened significance." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 57.

{¶ 14} R.C. 2151.414(E) further provides:

(E) In determining at a hearing held pursuant to division (A) of this section

or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 15} As previously stated, J.S. and B.S. were removed from Mother's custody in 2014 because of her drug use, and all three children were removed from Mother's custody

again in 2019 because of her use of illegal drugs. Additionally, at the time of the permanent custody hearing, the children had been in the temporary custody of CCDJFS for approximately 13 consecutive months.

{¶ 16} In 2019, CCDJFS developed a reunification case plan for Mother with the following objectives: 1) maintain safe and stable housing; 2) have a drug and alcohol assessment completed and follow all recommendations; 3) screen negative for all substances; 4) sign releases of information so that CCDJFS could speak with her providers; 5) have a mental health assessment and follow all recommendations; 6) obtain and maintain employment and refrain from violent relationships; 7) participate in Family Treatment Court; and 8) complete a parenting psychological exam.

{¶ 17} As found by the trial court, the record established that Mother failed to obtain safe and stable housing that would pass a home study. Additionally, after being found in possession of methamphetamine and drug paraphernalia, Mother was incarcerated from the summer of 2019 until February 11, 2020, when she entered the inpatient program at McKinley Hall, where she remained until March 13, 2020. The record established that Mother had completed a drug and alcohol assessment and followed through with the recommendations for treatment. Mother was also enrolled in Family Treatment Court in March 2020, and she advanced from Phase I to Phase II in June 2020. However, Mother was placed back into Phase I in July 2020 in light of her use of a drug not legally prescribed to her, gabapentin. Furthermore, Mother missed two weeks of Family Treatment Court because of an injury which she alleged occurred while she was at work, but she failed to provide any documentation to support her injury claim at the permanent custody hearing. The record established that Mother was able to gain employment, but

was unable to maintain said employment.

{¶ 18} The record also established that Mother had not had any contact with the children for many months. With respect to their current living arrangement, the trial court found that all three children were bonded with their foster family, and J.S. possessed sufficient maturity to express his wish to remain with his foster parents. The trial court also found that the children were adjusting well to their living situation and were not exhibiting any behavioral issues, and their foster family was committed to finalizing permanent adoption of the children. Additionally, the trial court found that the children's relationship with Mother was strained because of her ongoing drug use and domestic violence in the household, and CCDJFS was concerned with Mother's illegal use of gabapentin and her potential for relapse. The trial court also noted that the children had been in their current foster placement since November 2019, approximately 13 months. Thus, at the time of the permanent custody hearing, the children had been out of Mother's custody for more than 12 of the last 22 months.

{¶ 19} With respect to Mother's drug use, the trial court found and the record established that it had been an ongoing issue since 2014, when J.S. and B.S. were removed from her custody after B.S. tested positive for heroin a birth. Additionally, Mother failed to report her use of gabapentin without a prescription for several months, lied about it to CCDJFS when initially confronted, and then continued to test positive for the drug five more times after disclosure. Mother argues that the trial court gave too much weight to her illegal use of gabapentin, describing it as "Mother's only sin." Appellant's Brief, p. 8. Specifically, Mother points out that gabapentin is not an illegal substance. However, several Ohio courts have taken into account an individual's use of

gabapentin when terminating parental rights because the drug is "commonly abused by opiate addicts or people with an opiate abuse problem in lieu of the individual's available opiate." *See In re J.P.*, 8th Dist. Cuyahoga No. 107849, 2019-Ohio-1657, ¶ 22. Furthermore, Dr. Laura Kaplan, a licensed clinical psychologist who evaluated Mother, testified at the permanent custody hearing that she was concerned regarding the potential for future drug abuse by Mother and also a lack of accountability with respect to her failure to divulge her use of drugs not prescribed to her. Accordingly, we find that the trial court did not place too much weight on Mother's non-prescribed use of gabapentin.

{¶ 20} In sum, the record established that CCDJFS made every effort to reunite Mother with the children. Mother's failure to complete the case plan, however, established that she was either unwilling or incapable of adequately caring for the children. Although Mother made some effort to complete her case plan objectives, the record established that she failed to provide the children with safe and stable housing, failed to maintain stable employment, and regressed in Family Treatment because of her non-prescribed use of gabapentin. Therefore, we find that the trial court did not err when it found that clear and convincing evidence was adduced at the permanent custody hearing which supported an award of permanent custody of the children to CCDJFS and the termination of Mother's parental rights.

{¶ 21} Mother's sole assignment of error is overruled.

{¶ 22} Mother's assignment of error having been overruled, the judgment of the trial court in each case is affirmed.

. . . . . . . . . . . . .

HALL, J. and EPLEY, J., concur.


Copies sent to:

Ian A. Richardson
Gary C. Schaengold
Hon. Katrine Lancaster