[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *C.H. v. O'Malley,* Slip Opinion No. 2019-Ohio-4382.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4382

C.H. *v.* O'MALLEY, JUDGE, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *C.H. v. O'Malley,* Slip Opinion No. 2019-Ohio-4382.]**

*Prohibition—In a child-custody proceeding, Ohio has home-state jurisdiction to make the first child-custody determination of a particular child when Ohio is the child's home state on the date of the commencement of the proceeding—Juvenile-court judge and magistrate do not patently and unambiguously lack jurisdiction—Writ denied.*

(No. 2018-1191—Submitted July 9, 2019—Decided October 29, 2019.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} In this original action, relator, C.H., seeks a writ of prohibition to bar respondents, Cuyahoga County Juvenile Court Judge Jennifer L. O'Malley and her

designated magistrate,[1] from exercising jurisdiction over a case involving the custody of E.J.H., C.H.'s biological grandchild, *In re E.J.H.*, case No. CU 17 112728. On February 13, 2019, we denied a motion for judgment on the pleadings and granted an alternative writ. Upon consideration of the merits of C.H.'s arguments, we now deny the writ.

### The evidence in the record

{¶ 2} A.H., C.H.'s daughter, gave birth to E.J.H. on April 22, 2005, in Maricopa County, Arizona. The birth certificate did not identify the child's father.

{¶ 3} According to the evidence that has been submitted in this case, A.H. is alleged to have addiction issues with alcohol, marijuana, and methamphetamines, which has resulted in her having been arrested and hospitalized in the past. On April 5, 2017, the Superior Court in Maricopa County, Arizona, issued a final order of adoption by which C.H. adopted E.J.H. *In re adoption of M.S.H. and E.J.H.*, Maricopa S.C. No. JA51485.

{¶ 4} Two months later, A.H. drove from Arizona to Ohio with E.J.H., arriving at Cory Osley's home in Parma on or about June 20, 2017. Osley claims to be E.J.H.'s biological father and claims that E.J.H. has been living with him since June 20, 2017.

{¶ 5} On August 23, 2017, Osley filed an application to determine the custody of E.J.H. in the Cuyahoga County Court of Common Pleas, Juvenile Division. *In re E.J.H.*, Cuyahoga C.P. No. CU 17 112728. He also filed a motion for temporary emergency custody, alleging that E.J.H. "has been the victim of continual physical and emotional abuse perpetrated by his maternal grandmother,

---

1. On January 1, 2019, Judge O'Malley succeeded Judge Denise Rini, who was originally named as a respondent and who presided over the underlying matter at the time that C.H. filed the complaint for a writ of prohibition. Pursuant to S.Ct.Prac.R. 4.06(B), Judge O'Malley is automatically substituted as a party to this action. According to Judge O'Malley, the other named respondent, Magistrate Carolyn Ranke, is no longer a magistrate in the juvenile court, but the parties have not identified her replacement.

his mother and his mother's boyfriend" and that E.J.H. has "witnessed continual and habitual drug abuse by his mother and her boyfriend while under their care."

**{¶ 6}** In his pleadings, Osley represented that A.H. had "voluntarily relinquished possession of [their] son to [him]" and that A.H. "indicated that she wanted [their] son to reside with [him] permanently." Although Osley informed the juvenile court that E.J.H. had been residing with C.H. before June 20, 2017, he did not inform the court that C.H. had legally adopted E.J.H.

**{¶ 7}** The case was assigned to Judge Rini. The next day, August 24, 2017, the magistrate appointed a guardian ad litem and granted Osley temporary emergency custody so that E.J.H. could be enrolled in school. In a hearing on September 26, 2017, C.H. informed the magistrate of the Arizona adoption order. And A.H. "advised [the court] that she wished to have the child see his Father for the summer only rather than living with him." Without waiving her right to contest jurisdiction, C.H. consented to E.J.H. remaining in Ohio "until the next hearing." The magistrate ordered E.J.H. to be placed in Osley's temporary emergency custody.

**{¶ 8}** The magistrate thereafter issued orders maintaining the status quo of the case until the end of the 2017-2018 school year. According to the magistrate, "Legal Guardian [(C.H.)] is in agreement with the child remaining in Ohio but refuses to give up custody or consent to the jurisdiction of the State of Ohio as to custody proceedings for the child."

**{¶ 9}** In June 2018, the magistrate, after a hearing, rejected C.H.'s challenge to Ohio's jurisdiction over the case and set the matter for trial. Approximately one month later, a privately retained attorney appeared on C.H.'s behalf for the first time. C.H. then filed a motion asking the court to vacate all the previous orders that had been made in the case, to continue the trial date, and to order that E.J.H. be returned to the custody of C.H. On August 9, the magistrate again extended the temporary emergency-custody order and reserved judgment on the jurisdictional

issue. (The resulting order was not journalized until September 4, 2018.) And on September 24, 2018, following an evidentiary hearing, the magistrate ordered E.J.H. to remain in Osley's temporary emergency custody and awarded C.H. visitation rights. The magistrate further ordered that because E.J.H. had been living in Cuyahoga County, Ohio, since June 2017, the court had jurisdiction over E.J.H.'s "immediate well being."

**Procedural history**

{¶ 10} C.H. commenced this action for a writ of prohibition on August 21, 2018. Respondents (collectively, "Judge O'Malley") filed an answer and a motion for judgment on the pleadings. We denied the motion and granted an alternative writ and set a briefing schedule in accordance with S.Ct.Prac.R. 12.05.

**Analysis**

{¶ 11} Three elements are necessary for a writ of prohibition to issue: the exercise of judicial power, the lack of authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13. However, if the absence of jurisdiction is patent and unambiguous, a petitioner need not establish the third prong, the lack of an adequate remedy at law. *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 15.

{¶ 12} The first element is not in dispute: Judge O'Malley concedes that she has exercised, and will continue to exercise, judicial authority.

{¶ 13} With respect to the remaining elements, Judge O'Malley contends that jurisdiction exists under the terms of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The UCCJEA, codified in Ohio at R.C. Chapter 3127, gives jurisdictional priority and exclusive continuing jurisdiction to the courts of a child's "home state." *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 21. "Home state" is defined as "the state in

which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding * * *." R.C. 3127.01(B)(7). If Ohio is the child's home state "on the date of the commencement of the proceeding," R.C. 3127.15(A)(1), then an Ohio court has jurisdiction to make an initial determination in a child-custody proceeding, R.C. 3127.15(A).

{¶ 14} E.J.H. arrived in Ohio on or about June 20, 2017. Osley commenced the custody proceedings two months later, on August 23, 2017, less than the 6 months necessary to establish Ohio as E.J.H.'s home state. Therefore, Ohio did not have home-state jurisdiction over those proceedings. *See id*. at ¶ 44 (holding that the failure to satisfy the six-month requirement for home-state status is a jurisdictional defect).

{¶ 15} In her June 26, 2018 pretrial order, the magistrate concluded that the juvenile court had jurisdiction because "[t]he child ha[d] remained in Ohio for a period longer than 6 months." But the duration of the child's stay during the pendency of custody proceedings is not relevant to the jurisdictional analysis. The statute specifically requires the child to have resided in Ohio with a parent or a person acting as a parent for at least six consecutive months immediately preceding "the *commencement* of a child custody proceeding." (Emphasis added.) R.C. 3127.01(B)(7).

{¶ 16} Judge O'Malley appropriately concedes that Ohio did not have home-state jurisdiction over E.J.H. as of the date that Osley filed his initial custody action. But that concession does not end the home-state-jurisdiction analysis.

{¶ 17} On September 6, 2018, after C.H. filed her complaint for a writ of prohibition, Osley filed a Civ.R. 41(A)(1)(a) notice of voluntary dismissal without prejudice of his August 23, 2017 application to determine the custody of E.J.H., timestamped by the clerk at 2:51 p.m. Six minutes later, he filed a new motion to determine custody. Simultaneously, he also filed a motion for temporary

emergency custody. Although he had dismissed the first action, Osley typed the same case number—CU 17 112728—as the case number for the new motions. Linda Brooks, director of the Cuyahoga County Juvenile Clerk of Court, attests that "[p]ursuant to standard court operating procedures, the re-filing motion was docketed under original case number CU 17 112728."

**{¶ 18}** " 'A dismissal without prejudice leaves the parties as if no action had been brought at all.' " *Denham v. New Carlisle*, 86 Ohio St.3d 594, 596, 716 N.E.2d 184 (1999), quoting *DeVille Photography, Inc. v. Bowers*, 169 Ohio St. 267, 272, 159 N.E.2d 443 (1959). Thus, by dismissing and then refiling his application, Osley commenced new custody proceedings. And by the time he filed the new application, on September 6, 2018, E.J.H. had been in Ohio continuously for over one year, more than enough time to establish home-state jurisdiction under R.C. 3127.15(A)(1).

**{¶ 19}** C.H. contends that the dismissal of the first application is irrelevant. According to C.H., "[i]t is the date of the *first* commencement of the action that matters for purposes of determining whether six months have been reached." (Emphasis sic.) But the case she cites, *State ex rel. M.L. v. O'Malley*, 144 Ohio St.3d 553, 2015-Ohio-4855, 45 N.E.3d 971, is distinguishable.

**{¶ 20}** The child in *O'Malley* was born in Ohio in 2010, and resided in Ohio continuously through April 2011, when the father filed a custody application in Cuyahoga County. *Id*. at ¶ 2, 13. In May 2011, the mother moved the child to New Jersey. *Id*. at ¶ 2. Despite the fact that the mother was never served a copy of the father's custody application, the magistrate issued an order granting custody of the child to the father. *Id*. That custody order was vacated by the court of appeals based on failure of service. *Id*. at ¶ 14; *see also In re M.A.H.*, 8th Dist. Cuyahoga No. 97963, 2012-Ohio-2318, ¶ 25. In July 2012, the father filed a second application for custody of the child in the Cuyahoga County Juvenile Court under a new case number. *O'Malley* at ¶ 4. Subsequently, the mother sought a writ of

prohibition in the Eighth District Court of Appeals, arguing that as of July 2012, the child's home state was New Jersey, not Ohio. The court of appeals denied the writ and we affirmed. We held that although the original custody order was vacated due to failure of service, the court of appeals "explicitly declined to order the trial court to dismiss" that original action. *Id.* at ¶ 14. Consequently, the father's original custody action remained pending, notwithstanding the clerical decision to assign it a new case number. *Id.*

{¶ 21} Our decision to deny a writ of prohibition in *O'Malley* was squarely based on the fact that the first application was never dismissed. By contrast, Osley *did* dismiss his first application under Civ.R. 41(A)(1)(a), effectively making the original filing a nullity. C.H. has cited no statutory authority for the proposition that when more than one child-custody action is filed, the commencement date of the *first* child-custody action continues to govern the home-state-jurisdiction analysis after that application has been voluntarily dismissed and a second application filed.

{¶ 22} Ohio was E.J.H.'s home state as of September 6, 2018, when Osley filed the pending custody application. We therefore conclude that Judge O'Malley and her designated magistrate have jurisdiction over that pending action under R.C. 3127.15(A). Given this analysis, it is unnecessary to consider Judge O'Malley's alternative argument: that she and her designated magistrate have temporary emergency jurisdiction under R.C. 3127.15. Based on the foregoing, we deny the writ of prohibition.

Writ denied.

FRENCH, FISCHER, DEWINE, and DONNELLY, JJ., concur.

O'CONNOR, C.J., dissents.

KENNEDY, J., dissents, with an opinion joined by STEWART, J.

_____

**KENNEDY, J., dissenting.**

**{¶ 23}** The child in this custody dispute has been removed from the home of his adoptive mother in Arizona and placed in the temporary emergency custody of a legal stranger for over two years. In granting temporary emergency custody in this case, the juvenile court failed to give full faith and credit to an Arizona adoption decree and disregarded the requirements in R.C. Chapter 3127 designed to ensure that children do not linger in the limbo of temporary emergency-custody arrangements, as the child in this case has. Because the majority is permitting this miscarriage of justice to continue, I dissent and would grant a writ of prohibition and order the Cuyahoga County Court of Common Pleas, Juvenile Division, to return custody of the child to his lawful adoptive mother.

**Facts and Procedural History**

**{¶ 24}** A.H. gave birth to E.J.H. in Maricopa County, Arizona, on April 22, 2005. Cory Osley learned of the child's birth and believed himself to be the child's biological father, but he did not comply with Arizona's requirements for claiming paternity or registering as a putative father. Under Arizona law, Osley waived his right to be notified of any judicial hearing regarding E.J.H.'s adoption and his consent to the adoption was not required. *See* Ariz.Rev.Stat.Ann. 8-106.01(E). When E.J.H.'s grandmother, C.H., adopted the child in April 2017, Osley's parental rights were terminated; Osley, an Ohio resident, cannot claim to be the child's father, because, according to Arizona law, "[o]n entry of the decree of adoption, the relationship of parent and child between the adopted child and the persons who were the child's parents before entry of the decree of adoption is completely severed and all the legal rights, privileges, duties, obligations and other legal consequences of the relationship cease to exist," Ariz.Rev.Stat.Ann. 8-117(B). By statute, adoption decrees of another state are entitled to full faith and credit in Ohio. R.C. 3107.18(A).

**{¶ 25}** A.H. brought E.J.H. to Ohio in June 2017. Osley claimed that A.H. "voluntarily relinquished possession" of the child to him and that A.H. "indicated

that she wanted [E.J.H] to reside with [Osley] permanently." There is no evidence that C.H., the child's adoptive mother and legal custodian, gave permission for the child to visit Osley or to remain with him permanently.

{¶ 26} On August 23, 2017, Osley filed a motion in the Cuyahoga County Court of Common Pleas, Juvenile Division, seeking an order granting him temporary emergency custody over E.J.H. Osley alleged that A.H. was addicted to drugs and alcohol, that E.J.H. had been "the victim of continual physical and emotional abuse perpretrated [sic] by [C.H.], his mother and his mother's boyfriend," and that Osley could not enroll E.J.H. in school without an order granting Osley temporary emergency custody. The next day, the magistrate granted Osley temporary emergency custody in order to allow him to enroll E.J.H. in school but made no finding that E.J.H. had been subjected to or threatened with mistreatment or abuse; rather, the magistrate only stated that she "ha[d] concerns about A.H.'s substance abuse problems."

{¶ 27} The magistrate held a second hearing on September 26, 2017, at which C.H. and A.H. appeared and presented evidence that C.H. had legally adopted E.J.H. And according to the magistrate, A.H. told the court that "she [had] wished to have the child see [Osley] for the summer only rather than living with him." Questioning the validity of the adoption and referring to C.H. as E.J.H.'s "purported legal guardian," the magistrate continued the child's placement in the temporary emergency custody of Osley and prohibited C.H. from removing E.J.H. from the juvenile court's jurisdiction. And again, the magistrate made no finding that E.J.H. had been subjected to or threatened with mistreatment or abuse.

{¶ 28} On December 20, 2017, the magistrate issued an order maintaining the status quo until the end of E.J.H.'s 2017-2018 school year. And in an order dated June 26, 2018, the magistrate recognized C.H. as E.J.H.'s "Legal Mother" and found that the court "lack[ed] jurisdiction to void the Arizona adoption." Nonetheless, the magistrate also found that the court had jurisdiction over the

custody dispute because E.J.H. "ha[d] remained in Ohio for a period longer than 6 months," and she determined that she could consider the issue whether to grant custody of E.J.H. to C.H. or Osley. The June 26 order continued E.J.H.'s placement in Osley's temporary emergency custody—again without finding that E.J.H. had been subjected to or threatened with mistreatment or abuse.

**{¶ 29}** C.H. obtained legal counsel and on July 30, 2018, moved to vacate all of the magistrate's previous orders and to have E.J.H. returned to her, arguing that Ohio courts lacked jurisdiction over the child-custody dispute pursuant to R.C. 3127.15, which is part of Ohio's codification of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). C.H. asserted that Ohio was not E.J.H.'s home state when Osley had commenced the juvenile-court case because E.J.H. had not yet been in Ohio for six months. On August 9, the magistrate held a hearing and, in an order journalized September 4, again extended the temporary emergency-custody order and requested that Osley respond to the jurisdictional issues that had been asserted in C.H.'s motion.

**{¶ 30}** C.H. commenced this action for a writ of prohibition on August 21, 2018, against the juvenile-court judge and magistrate. On September 6, 2018, Osley filed a Civ.R. 41(A)(1)(a) notice of voluntary dismissal of his August 23, 2017 application to determine custody and then immediately filed a new motion to determine custody along with a new motion for temporary emergency custody. The magistrate conducted an evidentiary hearing on these new filings on September 24, 2018, and in an entry journalized on December 18, 2018, found that the court "c[ould] exercise jurisdiction over [E.J.H.'s] immediate well being" and that "based upon the testimony, the child should remain in his current school and in the Emergency Custody of [Osley]." Once again, the magistrate made no finding that E.J.H. had actually been subjected to or threatened with mistreatment or abuse.

**{¶ 31}** A little more than five months after the juvenile-court judge and magistrate answered the complaint and moved for judgment on the pleadings, we

issued an alternative writ and imposed an expedited schedule for filing briefs and evidence. Although this case was ripe for review on the merits on March 6, 2019, our delay until today in resolving this action has meant that E.J.H. has remained in Osley's temporary emergency custody for more than two years. In the meantime, Judge O'Malley has succeeded the original judge who had been named in C.H.'s complaint and the original magistrate no longer serves in that position in the juvenile court.

{¶ 32} For the following reasons, Judge O'Malley and her designated magistrate patently and unambiguously lack jurisdiction over E.J.H.'s juvenile case and we should grant the requested writ of prohibition.

**Prohibition**

{¶ 33} "Prohibition is an extraordinary writ and we do not grant it routinely or easily." *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.3d 536, 540, 660 N.E.2d 458 (1996). To be entitled to a writ of prohibition, the relator bears the burden to establish that the respondent is about to exercise or has exercised judicial power, that the exercise of that power is unauthorized by law, and that denying the writ would result in injury for which no other adequate remedy exists in the ordinary course of the law. *State ex rel. R.W. v. Williams*, 146 Ohio St.3d 91, 2016-Ohio-562, 52 N.E.3d 1176, ¶ 13. "Even if an adequate remedy exists, a writ may be appropriate when the lack of jurisdiction is patent and unambiguous." *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Court of Common Pleas, Probate Div.*, 150 Ohio St.3d 230, 2016-Ohio-7382, 81 N.E.3d 380, ¶ 19.

**The UCCJEA**

{¶ 34} The National Conference of Commissioners on Uniform State Laws adopted the UCCJEA in 1997 to provide uniform standards for determining which states may exercise jurisdiction over child-custody determinations. *See* UCCJEA, Prefatory Note, 9 U.L.A. 649, 650 (1997). It sought to prevent "jurisdictional

competition" among states in child-custody matters, promote cooperation among courts, "[d]iscourage the use of the interstate system for continuing controversies over child custody," deter parental kidnapping of children, avoid relitigation of custody decisions in another state, and facilitate the enforcement of custody decrees. *Id*. at Comment, Sec. 101, 9 U.L.A. 657. The UCCJEA also sought to harmonize state laws with the mandates of the federal Parental Kidnapping Prevention Act, 28 U.S.C. 1738A, which requires states to afford full faith and credit to any valid child-custody orders in other states and also gives priority to the child's "home state." *Id*. at Prefatory Note, 9 U.L.A. 650-651.

*Priority of the Home State*

**{¶ 35}** The UCCJEA is codified in R.C. Chapter 3127, and it "gives jurisdictional priority and exclusive continuing jurisdiction to the courts of the child's 'home state.' " *State ex rel. M.L. v. O'Malley*, 144 Ohio St.3d 553, 2015-Ohio-4855, 45 N.E.3d 971, ¶ 12. A child's "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding * * *. A period of temporary absence of any of them is counted as part of the six-month * * * period." R.C. 3127.01(B)(7)

**{¶ 36}** According to R.C. 3127.15(B), R.C. 3127.15(A) establishes "the exclusive jurisdictional basis for making a child custody determination by a court of this state." R.C. 3127.15(A) provides:

> Except as otherwise provided in section 3127.18 of the Revised Code [pertaining to temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child

within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

(2) A court of another state does not have jurisdiction under division (A)(1) of this section or a court of the home state of the child has declined to exercise jurisdiction on the basis that this state is the more appropriate forum under section 3127.21 or 3127.22 of the Revised Code, or a similar statute of the other state, and both of the following are the case:

(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(3) All courts having jurisdiction under division (A)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 3127.21 or 3127.22 of the Revised Code or a similar statute enacted by another state.

(4) No court of any other state would have jurisdiction under the criteria specified in division (A)(1), (2), or (3) of this section.

{¶ 37} The first step then, is to determine whether Ohio was E.J.H.'s "home state" when Osley commenced the proceedings at issue.

*The Voluntary-Dismissal Rule Does Not Apply in Determining Which State Is the Home State*

{¶ 38} Judge O'Malley concedes that when Osley "commenced his child custody proceeding on August 23, 2017, Ohio was not [E.J.H.'s] 'home state'

because [E.J.H.] clearly had not resided in Ohio for six consecutive months prior to that commencement." However, Judge O'Malley contends that this fact does not matter, because Osley voluntarily dismissed the child-custody proceeding and refiled it, leaving "the case in a posture in which [E.J.H.] now had resided with in [sic] Ohio for at least six consecutive months before the child custody proceeding was (re)filed."

{¶ 39} That argument is flawed. This court has never specifically held that a child-custody proceeding may be voluntarily dismissed and refiled pursuant to Civ.R. 41(A)(1)(a). Child-custody proceedings in the juvenile courts are governed by the Rules of Juvenile Procedure. Juv.R. 1(A) and (C). And although it is true that the Rules of Civil Procedure may provide guidance when no procedure is specifically provided by the Juvenile Rules, we will not apply them to juvenile-court proceedings when they are clearly inapplicable. *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, 868 N.E.2d 261, ¶ 11. And Civ.R. 41(A)(1)(a) is clearly inapplicable to child-custody proceedings, which are not comparable to civil litigation.

{¶ 40} Civ.R. 41(A)(1) provides that "a plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant." However, there are no plaintiffs or defendants in a child-custody proceeding brought in the juvenile court. *In re Pritt*, 5th Dist. Stark No. 1995CA00147, 1996 WL 132250, *1 (Mar. 4, 1996). Rather, there are only "parties," which include the child who is the subject of the juvenile-court proceeding, the child's parents, and when appropriate the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court. Juv.R. 2(Y). Unlike in civil litigation, where a plaintiff presents "claims"—i.e., "[a] demand for money, property, or a legal remedy to which one asserts a right," *Black's Law Dictionary* 301 (10th Ed.2014)—there are no claims to money, property, or a legal remedy at issue in child-custody proceedings because the central focus of the court "is not

* * * the rights of the parents but is, rather, the best interests of the children." *Kelm v. Kelm*, 92 Ohio St.3d 223, 226, 749 N.E.2d 299 (2001).

{¶ 41} For this reason, "[i]t is well understood that the substantive and procedural rules that are applicable in the unique context of juvenile court proceedings are quite different from those applicable during criminal or civil proceedings in courts of general jurisdiction." *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, 44 N.E.3d 239, ¶ 15. As the Ninth District Court of Appeals has explained:

> A custody hearing is not a civil dispute between a plaintiff and a defendant, but a status case concerning a child. The rules must provide the courts with the flexibility to determine what is in the best interest of each child; *they do not exist to provide parties with procedural tactics for manipulating the system*.

(Emphasis added.) *In re Jones*, 9th Dist. Lorain No. 96CA006393, 1996 WL 724757, *3 (Dec. 4, 1996) (holding that Civ.R. 41(A)(1) does not apply to child-custody proceedings).

{¶ 42} The duty owed by the juvenile courts to protect children under the doctrine of parens patriae would be undermined if a party seeking emergency custody of a child or alleging that the child is abused, neglected, or dependent could unilaterally dismiss a child-custody proceeding without leave of court. And we have rejected constructions of the Juvenile Rules that would "undermine the juvenile court system's ability to protect children" by fostering attempts to avoid oversight of parents who are alleged to have abused or neglected their children. *In re Z.R.* at ¶ 28 ("[i]f we were to hold that dismissal is required for venue defects in a dependency complaint, we might foster attempts by some parents to avoid

oversight by deliberately moving their abused, neglected, or dependent children from one county to another in order to avoid adjudication").

**{¶ 43}** It is for this reason that proceedings in juvenile court may be dismissed on motion and *with approval* of the court, Juv.R. 22(A), but the Juvenile Rules do *not* provide for a voluntary dismissal on a whim of the complainant.

**{¶ 44}** Here, Osley's attempt to voluntarily dismiss the underlying child-custody proceeding was a nullity. And further, at the time Osley commenced the original proceeding, Ohio was not E.J.H.'s home state because the child had not resided in this state for six months. Moreover, Arizona courts had, and continue to have, exclusive jurisdiction because (1) Arizona was the home state of E.J.H. within the six months prior to Osley's commencement of the original child-custody proceeding, (2) C.H., E.J.H.'s adoptive mother, continued to live in Arizona even though E.J.H. had been absent from that state, and (3) it appears that no Arizona court has declined to exercise jurisdiction on the basis that Ohio is the more appropriate forum. R.C. 3127.15(A).

**{¶ 45}** Therefore, because Ohio was not E.J.H.'s home state at the commencement of the child-custody proceeding, Ohio does not have jurisdictional priority under the UCCJEA or R.C. Chapter 3127.

*The Juvenile Court Is Not Making the Initial Child-Custody Determination*

**{¶ 46}** Even if Ohio were E.J.H.'s home state, R.C. 3127.15(A) provides jurisdiction for an Ohio court "to make an initial determination in a child custody proceeding." An "initial determination" is "the first child custody determination concerning a particular child." R.C. 3127.01(B)(8). A "child custody determination" is defined by statute to mean

> a judgment, decree, or other order of a court that provides for legal custody, physical custody, parenting time, or visitation with respect to a child. "Child custody determination" includes an order that

16

allocates parental rights and responsibilities. "Child custody determination" includes permanent, temporary, initial, and modification orders. "Child custody determination" does not include an order or the portion of an order relating to child support or other monetary obligations of an individual.

R.C. 3127.01(B)(3). And a "child custody proceeding" is

a proceeding in which legal custody, physical custody, parenting time, or visitation with respect to a child is an issue. "Child custody proceeding" may include a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, parentage, termination of parental rights, or protection from domestic violence. "Child custody proceeding" does not include a proceeding regarding juvenile delinquency, contractual emancipation, or enforcement pursuant to sections 3127.31 to 3127.47 of the Revised Code.

R.C. 3127.01(B)(4).

{¶ 47} In this case, the juvenile court cannot make the *initial* child-custody determination in the child-custody proceeding regarding E.J.H. The initial determination was made in Arizona in April 2017 when the Maricopa County Superior Court issued the decree granting C.H.'s request to adopt E.J.H. Under Arizona law, the adoption decree terminated the parental rights of A.H. and Osley, Ariz.Rev.Stat.Ann. 8-117(B), and created "the relationship of parent and child and all the legal rights, privileges, duties, obligations and other legal consequences of the natural relationship of child and parent * * * between the adopted child and the adoptive parent as though the child were born to the adoptive parent in lawful wedlock," Ariz.Rev.Stat.Ann. 8-117(A).

**{¶ 48}** The decree granted C.H. legal and physical custody of E.J.H. and therefore is "a child custody determination" made in a "child-custody proceeding" as those terms are defined in the statute. And while R.C. 3127.01(B)(3) expressly excludes child-support orders from the definition of "child custody determination," it does not exclude adoption decrees. Additionally, while R.C. 3127.01(B)(4) expressly excludes juvenile-delinquency, contractual-emancipation, and enforcement proceedings from the definition of "child custody proceeding," it does not exclude adoption decrees.

**{¶ 49}** Accordingly, a child-custody determination includes an adoption decree, and a child-custody proceeding includes an adoption proceeding as those terms are defined by the UCCJEA and R.C. 3127.01. And once the initial child-custody determination has been made in a child-custody proceeding, the grant of jurisdiction in R.C. 3127.15(A) does not apply.

**{¶ 50}** Judge O'Malley, however, contends that the granting of an adoption decree is not a child-custody determination because the UCCJEA, as adopted by Ohio and Arizona, "do[es] not govern adoption proceedings." R.C. 3127.02; Ariz.Rev.Stat.Ann. 25-1003. That statement is true but irrelevant. In this case, the juvenile court is conducting a child-custody proceeding, not an adoption proceeding. R.C. 3127.02 simply makes the point that "[s]ections 3127.01 to 3127.53 of the Revised Code" do not allocate the jurisdictional priority between a pending adoption proceeding and a prior or pending child-custody proceeding; "the jurisdictional provisions governing adoption proceeding[s] are generally found elsewhere," UCCJEA, Comment, Sec. 103, 9 U.L.A. 661. That does not mean that an adoption decree is not a child-custody determination for purposes of R.C. 3127.15(A)'s initial determination in a child-custody proceeding.

**{¶ 51}** For these reasons, the juvenile court does not have jurisdiction to make an initial child-custody determination regarding E.J.H. That initial determination has already been made by the Arizona court system.

18

*Jurisdiction to Modify a Custody Order*

{¶ 52} R.C. 3127.17 provides Ohio courts limited authority to modify a child-custody order made in another state:

> Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state may not modify a child custody determination made by a court of another state unless the court of this state has jurisdiction to make an initial determination under division (A)(1) or (2) of section 3127.15 of the Revised Code and one of the following applies:
>
> (A) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under section 3127.16 of the Revised Code or a similar statute of the other state or that a court of this state would be a more convenient forum under section 3127.21 of the Revised Code or a similar statute of the other state.
>
> (B) The court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

{¶ 53} As explained above, Ohio courts do not have jurisdiction pursuant to R.C. 3127.15(A)(1) to make an initial child-custody determination regarding E.J.H., and R.C. 3127.15(A)(2) does not apply because Arizona remains E.J.H.'s home state and it has not declined to exercise jurisdiction on the basis that Ohio is the more appropriate forum. But even if the juvenile court in this case had home-state jurisdiction, it nonetheless may not modify an adoption decree issued by another state because neither R.C. 3127.17(A) nor (B) apply; no evidence has been presented that the Arizona courts have relinquished exclusive, continuing

jurisdiction or found that Ohio is a more convenient forum, and it is undisputed that C.H. continues to reside in Arizona.

{¶ 54} Therefore, the juvenile court lacked and continues to lack jurisdiction to modify the adoption decree issued by the Maricopa County Superior Court.

*Temporary Emergency Jurisdiction*

{¶ 55} R.C. 3127.18(A) provides a separate basis for an Ohio court to make or modify a child-custody determination. That statute states:

> A court of this state has temporary emergency jurisdiction if a child is present in this state and either of the following applies:
>
> (1) The child has been abandoned.
>
> (2) It is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

{¶ 56} In drafting the UCCJEA, the National Conference of Commissioners on Uniform State Laws described the type of temporary emergency jurisdiction provided in R.C. 3127.18(A) as " 'extraordinary jurisdiction reserved for extraordinary circumstances.' " UCCJEA, Comment, Sec. 204, 9 U.L.A. 677, quoting the Uniform Child Custody Jurisdictional Act, Comment, Sec. 3(a)(3), 9 U.L.A. 309. We have therefore indicated that an Ohio "juvenile court has emergency and temporary jurisdiction over a child in Ohio only if it satisfies the requirements of the statute." *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 13. Upon learning that a child is the subject of a custody order issued by another state's court, the Ohio court is required to "immediately communicate" with the other state's court to determine how to address the emergency. R.C. 3127.18(D). The Ohio court may issue a temporary

emergency-custody order, but "when there has been a prior child-custody determination entitled to be enforced in Ohio, any emergency order under the statute is temporary and must specify the amount of time the court deems adequate to obtain an order from the other state." *V.K.B.* at ¶ 14, citing R.C. 3127.18(C).

{¶ 57} Osley's motion for temporary emergency custody alleged that E.J.H. had "been the victim of continual physical and emotional abuse perpretrated [sic] by his maternal grandmother, his mother and his mother's boyfriend," but he also asserted that the child had been voluntarily and permanently relinquished to him. Osley therefore did not allege that the child was in imminent danger of enduring any mistreatment or abuse—the alleged abusers were in Arizona—and he sought an order of temporary emergency custody simply to enroll E.J.H. in school. Notably, the magistrate never found that E.J.H. was in fact subjected to or threatened with mistreatment or abuse. After the first temporary emergency-custody hearing, the magistrate's order merely expressed "concerns about Mother's substance abuse problems" but did not otherwise address the allegations of abuse. It is manifest that the only purported "emergency" that was substantiated with any evidence was Osley's need to enroll E.J.H. in school. However, a grant of temporary emergency jurisdiction must be based on an emergency predicated on the abandonment, mistreatment, or abuse of a child, not the need to enroll a child in school.

{¶ 58} Moreover, the temporary emergency order did not specify a date certain when Osley's temporary emergency custody of E.J.H. would expire. And even when presented with proof that E.J.H. was the subject of an adoption decree and that E.J.H. had previously resided in Arizona with his adoptive mother, the magistrate still failed to comply with R.C. 3127.18. Rather than focus on whether E.J.H. was subject to mistreatment or abuse in Arizona, the motions and rulings over the next year focused on Osley's need for temporary custody so that he could continue E.J.H.'s enrollment in school. And Osley's arguments for temporary

emergency custody continued to be based on the fact that E.J.H. was doing well in classes and that E.J.H. preferred to reside in Ohio with Osley. In June 2018, when the magistrate finally recognized that Ohio's codification of the UCCJEA applied, the magistrate came to the erroneous conclusion that the court had jurisdiction because E.J.H. had been in the state of Ohio for "a period longer than 6 months." And it was only in September 2018—more than one year after the case had commenced in juvenile court and more than one month after C.H. filed her complaint for a writ of prohibition in this court—that the magistrate finally conducted an evidentiary hearing.

{¶ 59} The magistrate noted the testimony elicited at that hearing that "allegations of abuse were made" and that Osley had "concerns" with E.J.H.'s schooling and whether E.J.H.'s basic needs were being met in Arizona. Osley also explained that while living in Ohio, E.J.H. was doing better in school and had "proper clothing and hygiene products." The only evidence of abuse by C.H. was the "verbal abuse" aimed at E.J.H.'s birth mother, and there was no proof of current drug abuse in C.H.'s home. C.H. also presented evidence in the form of a notice that the Arizona Department of Child Safety had investigated Osley's allegations of abuse and found them to be unsubstantiated, and that she had obtained a protection order against A.H.'s boyfriend, who had allegedly abused E.J.H.

{¶ 60} At the conclusion of the hearing, the magistrate once again did not find that E.J.H. had been subjected to mistreatment or abuse; rather, she stated that the court "can exercise jurisdiction over [E.J.H.'s] immediate well being [sic]" and that "based upon the testimony, [E.J.H.] should remain in his current school and in the Emergency Custody of [Osley]." The magistrate then set the matter for yet another pretrial.

{¶ 61} A court of this state does not have temporary emergency jurisdiction pursuant to R.C. 3127.18(A) to advance the "wellbeing" of a child, to enroll the child in school, or to give effect to the child's preference to live with a legal stranger

against the wishes of the child's adoptive mother. It is not an open-ended grant of authority that may be extended from month to month for over one year without any indication that a permanent arrangement is being sought. And a juvenile court may not disregard the procedural requirements of R.C. 3127.18(C) and (D), which are designed to ensure a speedy resolution to an alleged emergency by requiring the Ohio court to immediately communicate with the court of the other state and to set a date certain for temporary emergency custody to expire. The juvenile court in this case failed to comply with these statutory requirements, which are intended to prevent temporary emergency jurisdiction from becoming the long-term exercise of continuing jurisdiction.

{¶ 62} Temporary emergency jurisdiction exists only in extraordinary circumstances—involving actual emergencies—to protect a child from ongoing or imminent mistreatment or abuse. It is manifest that even if Osley had properly invoked the juvenile court's temporary emergency jurisdiction in the first instance, that jurisdiction and the court's continued authority to act has lapsed by the passage of time and the failure of proof that E.J.H. is in any danger of mistreatment or abuse.

{¶ 63} The juvenile court therefore lacks temporary emergency jurisdiction over E.J.H.

### A Writ of Prohibition Should Issue

{¶ 64} For the above reasons, Judge O'Malley and her designated magistrate patently and unambiguously lack jurisdiction over the underlying custody proceedings of E.J.H. But even if the juvenile court had basic statutory jurisdiction, C.H. has no adequate remedy by way of appeal, *see V.K.B.*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, at ¶ 27, because the juvenile court (1) has removed the child from an adoptive parent who has been awarded permanent custody, (2) gave custody to a person whose parental rights to the child have been terminated, (3) is not complying with the requirements in R.C. Chapter 3127, and

(4) has issued a series of "temporary" orders over the course of more than one year with no indication of when a final resolution will be reached.

## Conclusion

**{¶ 65}** Temporary emergency jurisdiction is not intended to permit a legal stranger to gain a legal right to custody greater than that of a parent based on the barest allegation of abuse. Yet that is what has occurred in this case and what continues to this day. Therefore, a writ of prohibition should be issued forthwith and the juvenile court should be ordered to return E.J.H. to the custody of C.H., his adoptive mother.

**{¶ 66}** Because this court denies the writ, I dissent.

STEWART, J., concurs in the foregoing opinion.

_____

Rosenthal Thurman, L.L.C., and Katherine A. Friedell, for relator.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan, Assistant Prosecuting Attorney, for respondents.

_____