[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Drouhard v. Morrow Cty. Bd. of Commrs.*, Slip Opinion No. 2020-Ohio-4160.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4160

THE STATE EX REL. DROUHARD *v*. MORROW COUNTY BOARD OF

COMMISSIONERS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Drouhard v. Morrow Cty. Bd. of Commrs.*, Slip Opinion No. 2020-Ohio-4160.]**

*Prohibition—R.C. 339.02(H)—An appointing authority is empowered to remove a*
*member of a county hospital board of trustees—Each county commissioner*
*possesses an individual vote on an appointing authority—Writ denied.*

(No. 2019-1043—Submitted January 28, 2020—Decided August 25, 2020.)

IN PROHIBITION.

_____

**DEWINE, J.**

{¶ 1} This matter comes before us on a request for a writ of prohibition to prevent the three members of a board of county commissioners from going forward with a show-cause hearing to consider the removal of a member of the board of trustees of the county hospital.  We conclude that the three commissioners

constitute the majority of the "appointing authority" that is empowered by law to remove a member of the county hospital board. As a consequence, the commissioners do not patently and unambiguously lack jurisdiction to proceed with the show-cause hearing. Further, the hospital-board member possesses an adequate remedy by way of an appeal following the show-cause hearing. Thus, we deny the writ.

### I. A Dispute About the Authority to Remove Hospital Trustees

{¶ 2} At bottom, this is a dispute about who has the authority to appoint and remove members of the Morrow County Hospital Board of Trustees. On one side are the three members of the Morrow County Board of Commissioners; collectively and individually, they are the respondents in this action ("the Commissioners"). On the other side is Patrick Drouhard, the relator in this action. At the time the lawsuit was filed, Drouhard was the chairman of the Morrow County Hospital Board of Trustees.

{¶ 3} The Morrow County Hospital is a county-owned hospital, established by the Morrow County Board of Commissioners through the procedures set forth in Chapter 339 of the Ohio Revised Code. It is governed by a board of trustees ("the Hospital Board"). *See* R.C. 339.01(B); R.C. 339.02(B). The Revised Code specifies that the hospital trustees shall be appointed by "[t]he board of county commissioners together with the probate judge of the county senior in point of service and the judge of the court of common pleas of the county senior in point of service." R.C. 339.02(B). This appointing authority may remove any hospital trustee for neglect of duty, misconduct, or malfeasance in office. R.C. 339.02(H).

{¶ 4} The makeup of the appointing authority is at the center of this dispute. The Commissioners claim that in accordance with the historical practice in Morrow County, the appointing authority is a five-member body, with each commissioner having one vote. Drouhard has a different view. He argues that it is a three-member body, with the board of commissioners having a single, collective vote. In

Drouhard's view, the other two votes belong to Judge Robert C. Hickson Jr. Judge Hickson is the more senior of the two judges who sit on the Morrow County Court of Common Pleas. Under a unique statutory provision, the judges of the Morrow County Court of Common Pleas "also shall perform the duties and functions of the judge of the probate division." R.C. 2301.02(C).

### A. The Commissioners Seek to Hold a Show-Cause Hearing to Remove Drouhard

{¶ 5} In June 2019, the Commissioners sought to schedule a show-cause hearing to remove Drouhard as chairman of the Hospital Board. The Commissioners cited two instances of misconduct that they claimed warranted Drouhard's removal.

{¶ 6} The first asserted ground for removal involved a dispute about a contract for hospital-management services. The Hospital Board had entered into an agreement with OhioHealth Corporation to manage the hospital. The Commissioners sought to move the hospital in a different direction and exercise their authority under R.C. 339.09 to lease the hospital to a nonprofit organization. They notified the Hospital Board that they were pursuing a "long-term lease/purchase option," instructed the Hospital Board not to enter into any new management agreements, and issued a request for proposals. Drouhard, with the approval of the Hospital Board, responded by sending a cease-and-desist letter to the Commissioners, demanding that they halt all activities associated with their solicitation. The Commissioners rejected Drouhard's demand.

{¶ 7} The second asserted ground for removal concerned the appointment of a new trustee. In early 2019, two Commissioners and Judge Hickson met to consider the replacement of a member whose term was expiring. Although a motion was made at that meeting to appoint Earl Desmond as a hospital trustee, the motion was tabled without a vote.

{¶ 8} In March 2019, the three Commissioners approved a resolution, appointing Desmond as a hospital trustee for six years. Judge Hickson did not participate in the approval of the resolution. Subsequently, Judge Hickson wrote a letter to the Commissioners reiterating that he had made no decision on possible nominees for the vacant hospital-trustee position. After speaking with Judge Hickson, Drouhard determined that Desmond's appointment was defective because the appointing authority had not finalized its decision on his appointment. According to the Commissioners, Drouhard failed to treat Desmond as a member of the Hospital Board and excluded him from participating in meetings, even though Desmond was present at the meetings.

{¶ 9} Based upon these two purported instances of misconduct, the Commissioners adopted a resolution expressing their "unanimous sense" that Drouhard should be removed from office. The resolution set a hearing for July 8 so that Drouhard could appear and show cause why he should not be removed as chairman of the Hospital Board. The resolution was signed by all three Commissioners, but not by Judge Hickson.

{¶ 10} On July 5, Judge Hickson wrote a letter to the Commissioners in which he stated that he "recently became aware, through a newspaper article," of the resolution scheduling the show-cause hearing. Judge Hickson wrote that he was unable to attend on that date and asked that the meeting be rescheduled. He closed by noting that "[i]f the Board of Commissioners is unwilling to reschedule this meeting, please take notice that I am opposed to the removal of Patrick Drouhard as Chairperson of the Hospital Board."

{¶ 11} Drouhard appeared for the show-cause hearing on July 8. However, the hearing was postponed to a later date. The parties dispute the reason for rescheduling. The Commissioners say that Drouhard requested a continuance, while Drouhard maintains that the meeting was rescheduled because the Commissioners recognized that they had erred in acting on their own initiative.

### B. The Hearing Is Rescheduled and Drouhard Seeks a Writ of Prohibition

{¶ 12} On July 17, 2019, the Commissioners passed an amended resolution setting the show-cause hearing for August 1. The document was not signed by Judge Hickson. (According to an affidavit filed by one of the Commissioners, that date was selected "based on Judge Hickson's known schedule.") Two days later, Judge Hickson wrote to the Commissioners that he was "in receipt" of their correspondence but was not available on the date that the Commissioners set. Judge Hickson maintained that as both the probate judge and the common-pleas-court judge senior in point of service, he "make[s] up the majority of the Appointing Authority" and should have been consulted about scheduling.

{¶ 13} Drouhard filed his complaint for a writ of prohibition on July 30, 2019, before the scheduled date for the show-cause hearing. We issued an alternative writ and ordered the parties to file briefs and submit evidence in accordance with S.Ct.Prac.R. 12.05. 156 Ohio St.3d 1474, 2019-Ohio-3114, 128 N.E.3d 230.

### II. A Few Preliminary Procedural Matters

{¶ 14} Before we reach the merits of the case, we address several motions filed by the parties. Drouhard has filed two motions for leave to supplement the record. Because the supplemental evidence Drouhard wishes to introduce would establish facts that are mostly already in the record and not really disputed by the Commissioners, we deny the motions.

{¶ 15} The Commissioners have also filed a motion to dismiss this action as moot, asserting that Drouhard is no longer a member of the Hospital Board because his term on the board expired on March 1, 2020. Drouhard counters that the dispute is not moot because he remains on the Hospital Board and thus remains subject to the threat of removal. Drouhard does not dispute that his previous term expired, but he contends that he has been appointed to—and now is occupying—a different seat on the board, specifically, the seat to which the Commissioners claim

to have appointed Desmond. By statute, when a vacancy on a hospital board of trustees has not been filled by the appointing authority within six months, the hospital board may fill the vacancy. R.C. 339.02(F)(2). Relying on this provision, the Hospital Board voted to appoint Drouhard to the seat that the Commissioners allege is occupied by Desmond.

{¶ 16} Thus, whether this case is moot depends on whether Drouhard is presently a member of the Hospital Board. That question turns on the same legal issue we face in this prohibition action—the composition of the appointing authority. Because the question of mootness is intertwined with the merits of the action, we deny the request to dismiss as moot and proceed to the question in front of us.

### III.  We Deny Drouhard's Request for a Writ of Prohibition

{¶ 17} To obtain a writ of prohibition, one must establish three elements: the exercise of judicial or quasi-judicial power, the lack of legal authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Barney v. Union Cty. Bd. of Elections*, 159 Ohio St.3d 50, 2019-Ohio-4277, 147 N.E.3d 595, ¶ 11. However, if the absence of jurisdiction is patent and unambiguous, a petitioner need not establish the lack of an adequate remedy at law. *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 15.

{¶ 18} In opposing Drouhard's request for a writ, the Commissioners focus solely on the third element. They contend that there is no patent and unambiguous lack of jurisdiction and that Drouhard has an adequate remedy at law by way of appeal from any adverse decision. We agree.

### A.  *There Is an Adequate Remedy by Way of Appeal*

{¶ 19} When there is no patent and unambiguous lack of jurisdiction and the relator has an adequate remedy at law, prohibition will not issue. *C.H. v. O'Malley*, 158 Ohio St.3d 107, 2019-Ohio-4382, 140 N.E.3d 589, ¶ 11. Pursuant

6

to R.C. 2506.01(A), county courts of common pleas have jurisdiction to hear appeals of "every final order, adjudication, or decision of any * * * authority * * * of any political subdivision of the state." *See, e.g.*, *State ex rel. Capretta v. Zamiska*, 135 Ohio St.3d 177, 2013-Ohio-69, 985 N.E.2d 454, ¶ 4. Drouhard does not dispute that he possesses a remedy to challenge a removal decision through an appeal. Thus, in order for a writ of prohibition to issue, he must demonstrate a patent and unambiguous lack of jurisdiction.

### B. There Is No Patent and Unambiguous Lack of Jurisdiction

{¶ 20} Drouhard seeks to invoke the "narrow exception" that allows a court to issue a writ of prohibition notwithstanding the existence of an adequate remedy at law when a tribunal patently and unambiguously lacks jurisdiction. *Ohio High School Athletic Assn. v. Ruehlman*, 157 Ohio St.3d 296, 2019-Ohio-2845, 136 N.E.3d 436, ¶ 6. In his view, the Commissioners control only one of three votes on the appointing authority and therefore lack the power to take action on behalf of the entire body.

{¶ 21} To evaluate his claim, we turn to the language of the statute. R.C. 339.02(H) provides that a trustee "may be removed from office by the appointing authority for neglect of duty, misconduct, or malfeasance in office." Though the statute doesn't explicitly define the term "appointing authority," it does tell us who has the power to make appointments. R.C. 339.02(B) provides:

> Unless a board of county hospital trustees for the county is in existence in accordance with this section, such board shall be created pursuant to this section after the board of county commissioners first determines by resolution to establish a county hospital. Copies of such resolution shall be certified to the probate judge of the county senior in point of service and to the judge, other than a probate judge, of the court of common pleas of the county

senior in point of service. The board of county commissioners together with the probate judge of the county senior in point of service and the judge of the court of common pleas of the county senior in point of service shall, within ten days after such certification, appoint a board of county hospital trustees.

**{¶ 22}** Drouhard has two takeaways from this language: (1) the Commissioners have only one collective vote on the appointing authority and (2) Judge Hickson gets two votes because he is both the probate judge senior in service and the common pleas judge senior in service. Thus, he contends that because the Commissioners are the minority of the appointing authority, they lacked the authority to schedule a show-cause hearing and a writ of prohibition will properly issue to prevent the hearing from taking place.

1. *The statute provides for each of the commissioners to have one vote*

**{¶ 23}** Though the statute provides that "[t]he board of county commissioners" are members of the appointing authority, it does not specifically say whether this means each county commissioner or the board as a whole. But when we apply our traditional tools of statutory interpretation, it becomes clear that the provision means the former.

**{¶ 24}** Start with the principle that we consider words within the context in which they are written. *See Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 9. Here, the statutory scheme provides the board of county commissioners with the primary responsibility in the creation of a county hospital and the establishment and oversight of its governing authority. The "board of county commissioners may purchase, acquire, lease, appropriate, and construct a county hospital or hospital facilities thereof." R.C. 339.01(B). Or the board of county commissioners may choose to designate a county home for use as a county hospital. R.C. 339.021. A hospital board is created only after "the board

of county commissioners first determines by resolution to establish a county hospital." R.C. 339.02(B). The board of county commissioners determines the initial size of the board: a hospital board is composed of "six members, unless the board of county commissioners determines that the board of trustees can more effectively function with eight or ten members in which case there may be eight or ten members, as designated by the board of county commissioners." R.C. 339.02(D). The board of county commissioners sets the compensation for hospital trustees. *See* R.C. 339.02(I). The hospital board must file an account of its expenditures in building and equipping the hospital with the board of county commissioners and make final settlement with that board. R.C. 339.02(K). The board of county commissioners must approve the county hospital's budget. R.C. 339.06(D)(3). And the county commissioners must approve the county hospital's bidding and purchasing procedures. *See* R.C. 339.05(A).

{¶ 25} In all the aforementioned provisions, the legislature vested the sole authority with the county commissioners, with no provision for a role by any judicial representative. In light of the extensive and exclusive statutory role granted to the commissioners in these other areas, it would be incongruent for the board of county commissioners to be relegated to a minority role in the appointment and removal of hospital trustees. Drouhard's assertion that the two judicial representatives comprise the majority of the appointing authority is inconsistent with the statutory scheme. Absent some textual indication to the contrary, we are loathe to ascribe a reading to the disputed provision that is at odds with the other statutory provisions.

{¶ 26} Another contextual clue about the disputed provision's meaning comes from a different provision in the same statute regarding the creation of a selection committee to assist in the filling of a vacancy on the hospital board. R.C. 339.02(F)(3) provides that "the appointing authority may fill a vacancy by seeking nominations from a selection committee consisting of one county commissioner

designated by the board of county commissioners, the chair of the board of county hospital trustees, and the county hospital administrator." In this provision, the legislature clearly specified that the selection committee was to include only "one county commissioner designated by the board of county commissioners." The fact that the legislature did not use the same "one commissioner" language in providing for the appointing authority lends further weight to the view that the appointing authority includes each of the three commissioners.

{¶ 27} There is almost no authority interpreting the disputed provision. But what little there is also supports the notion that each commissioner is entitled to a vote on the appointing authority. In *In re Disqualification of White*, 91 Ohio St.3d 1203, 741 N.E.2d 133 (2000), then Chief Justice Moyer noted that the common pleas judge's "participation in the appointment process is required by statute and is limited in that he has only one of the five votes that can be cast in appointing a trustee." *See also In re Disqualification of Corbin*, 91 Ohio St.3d 1205, 741 N.E.2d 134 (2000) ("Moreover, the judge does not have sole authority to appoint the trustees, but exercises that authority in cooperation with the county commissioners and the judge of the probate division of the court of common pleas"). It is true that Chief Justice Moyer's disqualification decisions cannot be given the same weight as a decision of this court. But they do suggest that the provision has historically been read in the manner advocated by the Commissioners.

{¶ 28} Thus, while the statute certainly could have benefited from more careful draftsmanship, all indications are that each of the county commissioners possess a vote on the appointing authority, and thus constitute the majority of that body.[1]

---

1. We express no opinion as to Drouhard's claim that Judge Hickson is entitled to two votes on the appointing authority. The parties have not briefed that issue, and it is not necessary for us to address it to decide this case.

*2. The Commissioners had the authority to schedule the show-cause hearing*

{¶ 29} The three Commissioners constitute the majority of the appointing authority. Accordingly, they were well within their authority to schedule a show-cause hearing on Drouhard's removal. It is true that the statute requires that Drouhard be afforded an opportunity for a hearing before the appointing authority. R.C. 339.02(H). And one can imagine that if the Commissioners fail to provide notice of the meeting to the judicial members or refuse to allow the judicial members to participate, their decision might be subject to challenge on appeal. But the statute does not prescribe the precise manner in which the county commissioners must interact with the judicial members of the appointing authority in scheduling a show-cause hearing or in reaching a decision on removal. The issue here is simply whether there is a patent and unambiguous lack of jurisdiction. Because the Commissioners hold the majority of the votes on the appointing authority, it cannot be said that they "patently and unambiguously" lack jurisdiction to move forward with a removal hearing.

## IV. Conclusion

{¶ 30} The members of the Morrow County Board of Commissioners do not patently and unambiguously lack jurisdiction to proceed with a show-cause hearing on Drouhard's removal. If Drouhard is removed from the Hospital Board, he has an adequate remedy at law by way of appeal to the common pleas court. Hence, we deny Drouhard's request for a writ of prohibition.

Writ denied.

O'CONNOR, C.J., and FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY and FRENCH, JJ., not participating.

––––––––––––––

Dinsmore & Shohl, L.L.P., William M. Mattes, and Justin M. Burns, for relator.

11

Isaac, Wiles, Burkholder & Teetor, L.L.C., Mark Landes, and Matthew R. Aumann; and Farthing & Stewart, L.L.P., Brian S. Stewart, and John H. Farthing, for respondents.

————————————